George M. Wallace -- Cal. Bar No. 101472
WALLACE, BROWN & SCHWARTZ
215 North Marengo Avenue
Third Floor
Pasadena, California 91101-1504
Email: gwallace@wbslaw.com
(626) 844-6777; Fax (626) 795-0353

Attorney for Plaintiff LONE STAR SECURITY
& VIDEO, INC., a California corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONE STAR SECURITY & VIDEO, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES, et al. <br><br> Defendants. | ) Case No.: CV 11-02113 ODW (MRWx) <br> ) <br> ) Consolidated with <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| SAMI AMMARI, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES, <br><br> Defendant. | ) Case No.: CV 12-04644 ODW (MRWx) <br> ) <br> ) **PLAINTIFF SAMI AMMARI'S** <br> ) **MEMORANDUM OF POINTS AND** <br> ) **AUTHORITIES IN SUPPORT OF** <br> ) **MOTION FOR SUMMARY** <br> ) **JUDGMENT [Fed.R.Civ.P. 56]** <br> ) <br> ) DATE:            December 9, 2013 <br> ) TIME:            1:30 p.m. <br> ) COURTROOM:   11 <br> ) |

Notice of Motion and Motion for Summary Judgment [Ammari] - 1

# TABLE OF CONTENTS

*Introduction: The Contested Statutes and Ordinances ....................................2*

    *1.  California Vehicle Code Provisions—2010 Legislation ..........................2*

    *2.  Los Angeles Municipal Code Provisions re "Mobile Billboard Advertising Displays"..................................................................................4*

    *3.  California Vehicle Code Provisions—2011 Legislation ..........................6*

    *4.  California Vehicle Code Provisions—2012 Legislation ..........................8*

    *5.  Los Angeles Municipal Code Provisions re Advertising on Parked or Standing Motor Vehicles ........................................................10*

*Legal Argument.................................................................................................13*

*I.    The Prohibition on Parking a Motor Vehicle With Certain Types of "Advertising Signs" Affixed is a Content-Based Restriction, and Can Only Be Upheld if It Can Be Shown by the City to be "Necessary" to Serve a "Compelling" Interest and to be as Narrowly Drawn as is Practicable ......................................13*

*B.  If the Prohibition on Parking Motor Vehicles Bearing Certain Advertising Signs is Deemed a Content Neutral "Time, Place, and Manner" Restriction, It Fails to Satisfy the Requirements for Determining the Reasonableness of Such a Restriction.....................18*

*Conclusion........................................................................................................25*

# TABLE OF AUTHORITIES

**Cases**

*City & County of San Francisco v. Eller Outdoor Advertising*,

    192 Cal.App.3d 643, 237 Cal.Rptr. 815 (1987)..................................................13

*City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118 (1984) .....13

*City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728,

    152 L.Ed.2d 670 (2002) .................................................................................15

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,

    657 F.3d 936 (9th Cir. 2011)........................................................................passim

*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011

    (9th Cir. 2009) ........................................................................................19, 20

*Metromedia, Inc. v. San Diego*, 453 U.S. 490, 501, 101 S.Ct. 2882 (1981)...13, 18

*Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246 (9th Cir. 1988) ........................18

*S.O.C., Inc. v. County of Clark*, 152 F.3d 1136 (9th Cir. 1998).................15, 17, 19

**Statutes**

Ca. Vehicle Code §21100...........................................................................3, 4, 6, 10

Ca. Vehicle Code §22651 ...................................................................................3, 7

Ca. Vehicle Code §395.5 ..........................................................................................2

**Ordinances**

Los Angeles Municipal Code §87.54 ....................................................................10

Los Angeles Municipal Code§87.53 .......................................................................4

***Introduction: The Contested Statutes and Ordinances***

In this case, plaintiff Sami Ammari is contesting the constitutionality and enforceability of statutes and ordinances regulating and prohibiting advertising signage when that signage is attached to or carried on a motor vehicle.[1] Plaintiff Sami Ammari utilizes such signage to advertise his businesses, and he has been subjected to the taking and impound of his property, and remains subject to the threat of future takings, fines, or prosecution, under the claimed authority of the subject ordinances. Plaintiff contends that the subject statutes and ordinance are facially unconstitutional as impermissible restrictions of speech in violation of the First Amendment, either because they are content-based restrictions or because they are not "reasonable" in their regulation of the time, place and manner of protected speech. The history of the disputed enactments is as follows:

   *1.     California Vehicle Code Provisions—2010 Legislation*

In the 2010 legislative session, the California Legislature passed Assembly Bill ["A.B."] 2756. The bill became effective on January 1, 2011. Its provisions are not directly the subject of this action, but they provide necessary background to the current dispute.[2]

A.B. 2756 amended the California Vehicle Code to add new section 395.5, defining the previously unused and undefined term "mobile billboard advertising display" as follows:

---

[1]     The related and consolidated case of *Lone Star Security & Video, Inc. v. City of Los Angeles, et al.*, CV 11-02113 ODW ["*Lone Star*"], is concerned with separate ordinances in several cities regulating advertising speech on *non-*motorized vehicles.

[2]     The provisions enacted by A.B. 2756 are the subject of the *Lone Star* case.

---

Notice of Motion and Motion for Summary Judgment [Ammari] - 2

> A 'mobile billboard advertising display' means an advertising display that is attached to a **wheeled, mobile, nonmotorized** vehicle, that carries, pulls, or transports a sign or billboard, and is for the primary purpose of advertising.

(Emphasis added.) A.B. 2756 also amended Vehicle Code §21100, adding a new subdivision (m) to that statute, providing as follows:

> Local authorities may adopt rules and regulations by ordinance or resolution regarding the following matters:
>
> * * *
>
> (m)   Regulating mobile billboard advertising displays, as defined in Section 395.5, including the establishments of penalties, which may include, but is not limited to, removal of the mobile billboard advertising display and misdemeanor criminal penalties, for a violation of the ordinance or resolution.

A.B. 2756 also amended the provisions of existing California Vehicle Code section 22651, which dictates the conditions under which public authorities are permitted to remove or impound a vehicle, to add a new subdivision (v), providing in relevant part as follows:

> **§22651   Circumstances permitting removal**
>
> A peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or a regularly employed and salaried employee, who is engaged in directing traffic or enforcing parking laws and regulations, of a city, county, or jurisdiction of a state agency in which a vehicle is located, may

Notice of Motion and Motion for Summary Judgment [Ammari] - 3

remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances:

* * *

(v) (1)  When a vehicle is a mobile billboard advertising display, as defined in Section 395.5, and is parked or left standing in violation of a local resolution adopted pursuant to subdivision (m) of Section 21100, if the registered owner of the vehicle was previously issued a warning citation for the same offense, pursuant to paragraph (2).

(2)      Notwithstanding subdivision (a) of Section 22507, a city or county, in lieu of posting signs noticing a local ordinance prohibiting mobile advertising billboard displays adopted pursuant to subdivision (m) of Section 21100, may provide notice by issuing a warning citation advising the registered owner of the vehicle that he or she may be subject to penalties upon a subsequent violation of the ordinance, that may include the removal of the vehicle as provided in paragraph (1)....

2.    *Los Angeles Municipal Code Provisions re "Mobile Billboard Advertising Displays"*

On December 17, 2010, under the authority of amended Vehicle Code §21100, subdivision (m), the City of Los Angeles, through its City Council, adopted new §87.53 of the Los Angeles Municipal Code, providing in relevant part as follows:

Notice of Motion and Motion for Summary Judgment [Ammari] - 4

## REGULATION OF MOBILE BILLBOARD ADVERTISING DISPLAYS

It shall be unlawful for any person to park a mobile billboard advertising display, as defined in Section 395.5 of the California Vehicle Code, on any public street or public lands in the City of Los Angeles.

(a)      **Mobile Billboard Advertising Display Definition.**

Section 395.5 of the California Vehicle Code applies to this chapter with respect to the definition of a mobile billboard advertising display.  Section 395.5 of the California Vehicle Code is incorporated by reference . . . .

(b)      **Removal of Mobile Billboard Advertising Displays Authorized.**

Pursuant to Section 22651, subdivision (v) of the California Vehicle Code, any peace officer, or any regularly employed or salaried employee of the City, who is engaged in directing traffic or enforcing parking laws and regulations in which the mobile billboard advertising display is located may remove the mobile billboard advertising display located within the territorial limits of the City when the mobile advertising billboard display is found upon  any public street or any public lands, if all of the following requirements are satisfied:

1.      When a vehicle is a mobile billboard advertising display, as defined in Section 395.5 of the California Vehicle Code, and is parked or left standing in violation

Notice of Motion and Motion for Summary Judgment [Ammari] - 5

of this Code, if the registered owner was previously issued a warning citation for the same offense;

2.    A warning citation was issued to a first-time offender at least 24 hours prior to the removal of the vehicle.  The City is not required pursuant to Section 22651(v)(2) of the California Vehicle Code to provide further notice for a subsequent violation prior to enforcement; and

3.    The warning citation advised the registered owner of the vehicle that he or she may be subject to penalties upon a subsequent violation of the ordinance that may include the removal of the vehicle.

### 3.    *California Vehicle Code Provisions—2011 Legislation*

The statutes and ordinances governing "mobile billboard advertising displays" by their terms dealt only with the display of advertising on *non-motorized* vehicles. In its 2011 legislative session, the California Legislature revisited the Vehicle Code provisions that it had amended in A.B. 2756 during the 2010 session, and added new provisions addressing advertising on motorized vehicles, through the passage of Assembly Bill 1298. That bill became effective on January 1, 2012. A.B. 1298 added a new subdivision (p), concerning advertising involving motor vehicles. Section 21100 as amended by A.B. 1298 provides in relevant part as follows:

Local authorities may adopt rules and regulations by ordinance or resolution regarding the following matters:

* * *

Notice of Motion and Motion for Summary Judgment [Ammari] - 6

(p) (1)  Regulating advertising signs on motor vehicles parked or left standing upon a public street. The ordinance or resolution may establish a minimum distance that the advertising sign shall be moved after a specified time period.

(2)  Paragraph (1) does not apply to advertising signs that are painted directly upon or are permanently affixed to the body of, an integral part of, or fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width, or heighth [*sic*] of the vehicle.

A.B. 1298 also further amended the provisions of Vehicle Code section 22651 to add a new subdivision (w) to that statute, concerning advertising and motor vehicles. That section now provides in relevant part:

### §22651   Circumstances permitting removal

A peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, or a regularly employed and salaried employee, who is engaged in directing traffic or enforcing parking laws and regulations, of a city, county, or jurisdiction of a state agency in which a vehicle is located, may remove a vehicle located within the territorial limits in which the officer or employee may act, under the following circumstances:

* * *

(n)  Whenever a vehicle is parked or left standing where local authorities, by resolution or ordinance, have prohibited parking or have authorized the removal of vehicles. Except as provided in

Notice of Motion and Motion for Summary Judgment [Ammari] - 7

subdivisions (v) and (w), a vehicle shall not be removed unless signs are posted giving notice of the removal.

* * *

(w)(1)  When a vehicle is parked or left standing in violation of a local ordinance or resolution adopted pursuant to subdivision (p) of Section 21100, if the registered owner of the vehicle was previously issued a warning citation for the same offense pursuant to paragraph (2).

(2)  Notwithstanding subdivision (a) of Section 22507, a city or county, in lieu of posting signs noticing a local ordinance regulating advertising signs adopted pursuant to subdivision (p) of Section 21100, may provide notice by issuing a warning citation advising the registered owner of the vehicle that he or she may be subject to penalties upon a subsequent violation of the ordinance that may include the removal of the vehicle as provided in paragraph (1). A city or county is not required to provide further notice for a subsequent violation prior to the enforcement of penalties for a violation of the ordinance.

4. *California Vehicle Code Provisions—2012 Legislation*

In its 2012 legislative session, the California Legislature again Vehicle Code §21100(p), concerning signage on motor vehicles. In passing Assembly Bill 2291, the Legislature amended that subdivision such that it now provides as follows:

Local authorities may adopt rules and regulations by ordinance or resolution regarding the following matters:

Notice of Motion and Motion for Summary Judgment [Ammari] - 8

* * *

(p) (1)  Regulating advertising signs on motor vehicles parked or left standing upon a public street. The ordinance or resolution may establish a minimum distance that the advertising sign shall be moved after a specified time period.

(2)  Paragraph (1) does not apply to any of the following:

(A)  Advertising signs that are permanently affixed to the body of, an integral part of, or a fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width, or height of the vehicle.

(B)  If the license plate frame is installed in compliance with Section 5201, paper advertisements issued by a dealer contained within that license plate frame or any advertisements on that license plate frame.

(3)  As used in paragraph (2), "permanently affixed" means any of the following:

(A)  Painted directly on the body of a motor vehicle.

(B)  Applied as a decal on the body of a motor vehicle.

(C)  Placed in a location on the body of a motor vehicle that was specifically designed by a vehicle manufacturer as defined in Section 672 and licensed pursuant to Section 11701, in compliance with both state and federal law or guidelines, for the express purpose of containing an advertising sign.

5. *Los Angeles Municipal Code Provisions re Advertising on Parked or Standing Motor Vehicles*

On March 7, 2012, under the authority of amended Vehicle Code §21100, subdivisions (m) and (p), the City Council of the City of Los Angeles adopted Ordinance No. 182083, adding a new §87.54 of the Los Angeles Municipal Code, which purported to prohibit the parking of vehicles comparable to Lone Star's advertising vehicles, and to permit their impound and the imposition of civil and criminal penalties on the vehicle owner. The Ordinance was signed by the Mayor of Los Angeles, and became effective immediately, on March 13, 2012. Following the passage of A.B. 2291, the ordinance was amended as of April 30. 2013, to conform to the current version of Vehicle Code §22110(p). Los Angeles Municipal Code §87.54 as currently in force provides as follows:

**REGULATION OF ADVERTISING SIGNS**

**ON MOTOR VEHICLES PARKED OR LEFT STANDING ON**

**CITY STREETS OR PUBLIC LANDS**

A motor vehicle may contain advertising signs that are painted directly upon or are permanently affixed to the body of, an integral part of, or fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width, or height of the vehicle. "Permanently affixed" means any of the following: (a) painted directly on the body of a motor vehicle; (b) applied as a decal on the body of a motor vehicle; (c) placed in a location on the body of a motor vehicle that was specifically designed by a vehicle manufacturer as defined in California Vehicle Code Section 672 and licensed pursuant to

Notice of Motion and Motion for Summary Judgment [Ammari] - 10

California Vehicle Code Section 11701, in compliance with both state and federal law or guidelines, for the express purpose of containing an advertising sign.  A license plate frame installed in compliance with California Vehicle Code Section 5201 may contain an advertisement on that license plate frame and/or a paper advertisement contained within the license plate frame if the paper advertisement was issued by a motor vehicle dealer.  A motor vehicle in violation of this Section may be impounded pursuant to California Vehicle Code Section 22651(w), Subsections (1) and (2).

(a)     **Post Storage Impound Hearing.**

Section 22852 of the California Vehicle Code applies to this Section with respect to the removal of any motor vehicle pursuant to California Vehicle Code Section 22651(w)(1).  Section 22852 is incorporated by reference as if set forth in full herein and provides, in summary, that whenever an authorized employee of the City directs the storage of a vehicle, the City shall direct the storage operator to provide the vehicle's registered and legal owner(s) of record, or their agent(s), with the opportunity for a post-storage hearing to determine the validity of the storage.  Notice of the storage shall be mailed or personally delivered to the registered and legal owner(s) within 48 hours, excluding weekends, as specifically provided for under Section 22852 of the California Vehicle Code. To receive a post-storage hearing, the owner(s) of record, or their agent(s), must request a hearing, in person, in writing or by telephone, within ten days of the date appearing on the notice.  The

City may authorize its own officer or employee to conduct the hearing as long as the hearing officer is not the same person who directed the storage of the vehicle.

(b)      **Violation - Penalties**

After the initial warning citation, a subsequent offense of this Section is a misdemeanor, punishable upon conviction by a fine of not less than Two Hundred Fifty Dollars ($250.00), nor more than One Thousand Dollars ($1,000.00), or by imprisonment in the county jail for not more than six months, or by both fine and imprisonment.  The City Council may establish from time to time by resolution an increase in the amount of the fine.

(c)      **Severability**

If any subsection, sentence, clause, or phrase of this Section is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this Section.  The City Council hereby declares that it would have adopted this Section, and each and every subsection, sentence, clause and phrase thereof not declared invalid or unconstitutional, without regard to whether any portion of the ordinance would be subsequently declared invalid or unconstitutional.

***Legal Argument***

**I.      *The Prohibition on Parking a Motor Vehicle With Certain Types of "Advertising Signs" Affixed is a Content-Based Restriction, and Can Only Be Upheld if It Can Be Shown by the City to be "Necessary" to Serve a "Compelling" Interest and to be as Narrowly Drawn as is Practicable***

The California Vehicle Code sections adopted and amended by A.B. 1298 and A.B. 2291 purport to authorize municipalities to adopt ordinances under which it is illegal to park otherwise lawful motor vehicles anywhere within the municipal boundaries. Motor vehicles that can be parked are distinguished from motor vehicles that cannot be parked by the absence or presence of certain types of "advertising signs." The term "advertising" is not itself specifically defined either in the statute or in the Los Angeles ordinance. Advertising signs are, however, plainly a form of speech activity, regulation of which must comply with applicable standards under the First Amendment to the Constitution.

Every form of advertising, whether or not it incorporates any commercial element, has in common that it is by definition a communicative act, an act of *speech*. "It is well-established that because signs and billboards provide a forum for the expression of ideas, any governmental regulation or prohibition thereof bears scrutiny under the First Amendment." *City & County of San Francisco v. Eller Outdoor Advertising*, 192 Cal.App.3d 643, 656, 237 Cal.Rptr. 815, 822-823 (1987) , citing *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 803, 104 S.Ct. 2118, 2127 (1984), and *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 501, 101 S.Ct. 2882, 2889 (1981).

'When the Government restricts speech, **the Government bears the burden of proving the constitutionality of its actions**.' *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011, *en banc*), cert. denied, *City of Redondo Beach v. Comite De Jornaleros De Redondo Beach*, ___ U.S. ___, 132 S.Ct. 1566, 2012 WL 538394 (Feb. 21, 2012) ["*Comite de Jornaleros*"], emphasis added. The City is unable to establish that these statutes and Municipal Code §87.54 do not exceed the scope of permissible speech regulation under the First Amendment.

The degree to which a government-imposed speech restriction or regulation is permissible depends to a large extent on whether the regulation is "content based" or "content neutral." When content is specifically targeted, the enactment must satisfy a more stringent standard than applies to neutral regulation of speech activity. The regulation of motor vehicle advertising signs at issue in this case should be found to be constitutionally impermissible, under either standard.

Our analysis is guided by certain well-established principles of First Amendment law. In public places such as streets and sidewalks, 'the State [may] enforce a content-based exclusion' on speech if the 'regulation is **necessary to serve a compelling state interest** and that it is **narrowly drawn to achieve that end**.' *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). For content-neutral regulations, the State may limit 'the time, place, and manner of expression' if the regulations

Notice of Motion and Motion for Summary Judgment [Ammari] - 14

are '**narrowly tailored to serve a significant government interest**, and **leave open ample alternative channels** of communication.' *Id.* *Comite de Jornaleros*, *supra*, 657 F.3d at p. 940, emphasis added.

Content-based regulations are **presumptively unconstitutional**. *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Content-based regulations pass constitutional muster **only** if they are the **least restrictive means to further a compelling interest**. *See Sable Communs. of Cal. v. F.C.C.,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).

*S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir. 1998) ["*S.O.C.*"], emphasis added.

The determination whether an enactment is content-based it typically straightforward: 'whether a statute is content neutral or content based is something that can be determined on the face of it; **if the statute describes speech by content then it is content based**.'" *Comite de Jornaleros*, *supra*, 657 F.3d at p. 952 (Gould, J., concurring in the judgment), emphasis added, quoting *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 448, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (Kennedy, J., concurring in the judgment).

In construing the related regulation of "mobile billboard advertising displays" in the *Lone Star* case, this Court and the Ninth Circuit construed the unmodified term "advertising" to encompass any and all messages that might be conveyed on a sign. See, e.g., 9th Circuit Memorandum, USDC Docket #70, at p. 3: "[F]or present purposes our conclusion that **a display of any message falls**

Notice of Motion and Motion for Summary Judgment [Ammari] - 15

**within the definition of 'advertising'** is sufficient to find the ordinances content neutral." (Emphasis added.)

Unlike the "mobile billboard" ordinances, however, the motor vehicle sign ordinance and the provisions of Vehicle Code §21100(p) **do** distinguish between different varieties of speech and express based upon content. While the former regulates all forms of "advertising" uniformly, the latter distinguishes between advertising and non-advertising speech, or between different varieties of "advertising sign" depending upon the nature of the information being conveyed. Some speech is permitted while other types are not. Under the ordinance, "A motor vehicle **may** contain advertising signs … **for permanent decoration, identification or display**…." (Emphasis added.) Advertising signs serving different purposes, such as endorsing a product, a service, an event or attraction or performance, a political candidate, or a policy position, are **not** permissible under the ordinance.[3] An impounding officer must, accordingly, examine the content of each particular "advertising sign" to determine whether it conveys "decoration, identification or display" or whether its message is something else.

In *S.O.C.*, *supra*, the Ninth Circuit considered an ordinance seeking to restrict the distribution of commercial handbills along "the Strip" in Las Vegas, Nevada. In determining that that ordinance was unconstitutionally overbroad, the court rejected the defendant county's contention that the ordinance was a permissible, content-neutral "time, place and manner" rule. The court emphasized

---

[3] Even advertising signs that serve the purpose of "decoration, identification or display" may not be permissible unless they are "permanently affixed" to the vehicle by one of the limited methods listed in the ordinance. In fact, the ordinance is unclear as to whether advertising signs *other than* those for "decoration, identification or display" are *ever* permissible, *even if* they are "permanently affixed" as defined.

---

Notice of Motion and Motion for Summary Judgment [Ammari] - 16

that the need to analyze the messages conveyed by each potentially violative publication necessitated the conclusion that the ordinance was content-based:

> Under the time, place and manner standard, government imposed restrictions on protected speech are 'valid if they (1) are ***content-neutral***; (2) are narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels of communication.' *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (citing *Rock Against Racism*, 491 U.S. at 790, *cert. denied*, 519 U.S. 1009, 117 S.Ct. 554, 136 L.Ed.2d 403 (1996)).
>
> A speech restriction is content-neutral if it is 'justified without reference to the content of the regulated speech.' *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Here, the Clark County Ordinance refers to the content of speech; it regulates handbills that 'propose one or more commercial transactions.' The Ordinance targets and restricts the distribution of material containing *some* commercial information. The Ordinance's ban against 'off-premises canvassing' in the Las Vegas Resort District does not prohibit the distribution of handbills that contain no commercial advertising. As a result, an officer who seeks to enforce the Clark County Ordinance **would need to examine the contents of the handbill to determine whether its distribution was prohibited**. [Citations.]

*S.O.C.*, *supra*, 152 F.3d at p. 1145, italics original, boldface added.

Notice of Motion and Motion for Summary Judgment [Ammari] - 17

When a regulation is content-based, it must satisfy the rigorous test of being "necessary" to advance a "compelling" state interest. The principal interests that the City cited in adopting Municipal Code §87.54 are traffic safety and aesthetics. The rule is settled in this circuit that for purposes of First Amendment analysis, "interests in traffic safety and aesthetics, while 'substantial,' [fall] shy of 'compelling.'" See, e.g., *Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 249 (9th Cir. 1988), citing *Metromedia, Inc v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882 (1981). They therefore cannot justify a content based restriction. Unless the City is able to articulate a "compelling" rationale, its distinction between differing varieties of "advertising signs" cannot withstand constitutional scrutiny and the entire ordinance must fail.

**B.     If the Prohibition on Parking Motor Vehicles Bearing Certain Advertising Signs is Deemed a Content Neutral "Time, Place, and Manner" Restriction, It Fails to Satisfy the Requirements for Determining the Reasonableness of Such a Restriction**

If the Court concludes that Municipal Code §87.54 is not a content based restriction subject to strict scrutiny, the ordinance is also unsound under the looser standard applicable to content neutral regulations of speech activity. A limitation on speech that is not content-based is still subject to attack under the First Amendment if it is found not to be a **reasonable** "time, place and manner" restriction.

'[R]easonable time, place, [and] manner restrictions' on speech are permissible. *Clark v. Cmty. for Creative Non–Violence*,

---

Notice of Motion and Motion for Summary Judgment [Ammari] - 18

468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).… As the Supreme Court wrote in *Clark*, 'We have often noted that restrictions of this kind are valid provided [1] that they are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication of the information.' *Id*. (bracketed numbers added).…

*Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009); see also *S.O.C.*, *supra*, 152 F.3d at p. 1145.

Assuming for argument's sake that the Los Angeles motor vehicle advertising sign ordinance is deemed content neutral, it still casts its prohibitions too broadly. In particular, it is not a " narrowly tailored" enactment. Concerning the requirement of "narrow tailoring," the Ninth Circuit has stated:

Three questions guide courts in analyzing narrow tailoring, the second aspect. First, does the regulation achieve its ends **without restricting substantially more speech than necessary**? This 'requirement ... is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." ' [Citation.] The Supreme Court has cautioned that 'this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals.' *Id*.… Second, are there **obvious alternatives that would**

Notice of Motion and Motion for Summary Judgment [Ammari] - 19

**achieve the same objectives with less restriction of speech**? A city is not required to select the least restrictive alternative, but 'an assessment of alternatives can still bear on the reasonableness of the tailoring.' *Menotti v. City of Seattle,* 409 F.3d 1113, 1131 n. 31 (9th Cir. 2005); *see also City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 417 n. 13, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). Third, is a generic regulation needed 'as applied to other speakers,' even if it is not needed in the case at hand? *Galvin v. Hay,* 374 F.3d 739, 753 (9th Cir. 2004). This question addresses '[t]he multiplied effect of' a particular expressive activity 'if many other organizations likewise decided to engage in this activity on a pervasive or regular basis.' *ACORN,* 798 F.2d at 1270; *see also Clark,* 468 U.S. at 296–97, 104 S.Ct. 3065.

*Long Beach Area Peace Network v. City of Long Beach*, *supra*, 574 F.3d at pp. 1024-25, emphasis added.

The regulation 'need not be the least restrictive or least intrusive means of" achieving the government's goals, but it may not 'burden substantially more speech than is necessary.' *Id.* at 798–99, 109 S.Ct. 2746. Put another way, the regulation must 'focus[ ] on the source of the evils the city seeks to eliminate ... and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.' *Id.* at 799 n. 7, 109 S.Ct. 2746.

*Comite de Jornaleros*, *supra*, 657 F.3d at p. 947. Similarly, concerning the requirement of "ample" alternatives, the Ninth Circuit has written:

Notice of Motion and Motion for Summary Judgment [Ammari] - 20

The third criterion applicable to time, place and manner restrictions is that regulations '**must leave open ample alternatives** for communication.' *Forsyth County,* 505 U.S. at 130, 112 S.Ct. 2395. Several considerations are relevant to this analysis. First, '[a]n alternative is not ample if the speaker is not permitted to reach the intended audience.' *Bay Area Peace Navy v. United States,* 914 F.2d 1224, 1229 (9th Cir. 1990) (internal quotation marks omitted); *see also Menotti,* 409 F.3d at 1138. Second, if the location of the expressive activity is part of the expressive message, alternative locations may not be adequate. *Galvin,* 374 F.3d at 756; *ACORN,* 798 F.2d at 1267 n. 5. Third, we consider the opportunity for spontaneity in determining whether alternatives are ample, particularly for political speech. *City of Richmond,* 743 F.2d at 1356. Fourth, we consider the cost and convenience of alternatives. *City of Ladue v. Gilleo,* 512 U.S. 43, 57, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

*Id.*, 574 F.3d at p. 1025, emphasis added.

In general terms, even a content neutral regulation that reaches speech activity must have a reasonably close "fit" to legitimate governmental purposes. If the purpose is unsound, or if the "fit" between the proper purpose and the impositions on speech is insufficiently clear, the enactment is constitutionally unsound. As the Ninth Circuit writes in *Comite de Jornaleros*:

Although the City need not necessarily employ the *least-restrictive* alternative, it may not select an option that unnecessarily imposes significant burdens on First Amendment-protected speech.

Notice of Motion and Motion for Summary Judgment [Ammari] - 21

'If the First Amendment means anything, it means that regulating speech must be a last—not first—resort.' *Thompson v. W. States Med. Ctr.,* 535 U.S. 357, 373, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002). Because the Ordinance 'suppress[es] a great quantity of speech that does not cause the evils that it seeks to eliminate,' *Ward,* 491 U.S. at 799 n. 7, 109 S.Ct. 2746, it is facially invalid. We do not doubt that a properly drawn ordinance could achieve the City's goals; however, *this* Ordinance does not pass the test.

*Comite de Jornaleros*, *supra*, 657 F.3d at pp. 950-51.

Los Angeles Municipal Code §87.54, purports to advance the governmental purposes of aesthetics and traffic safety. [4] Those are purposes that have been recognized as sufficient for purposes of an otherwise permissible "time, place and manner" limitation. As currently in effect, however, Los Angeles Municipal Code §87.54 lacks the requisite fit in support of that interest on a number of grounds, including:

- The ordinance distinguishes between "advertising signs" that perform some functions ("decoration, identification, or display") and those that perform others, when there is no rational basis for concluding that the former differ at all from the latter in terms of either aesthetics or safety.

---

[4] The original version of Los Angeles Municipal Code §87.54 included factual findings, eliminated in the most recent amendment, articulating safety concerns. Those findings—that "temporary signs affixed to motor vehicles pose a significant public safety risk, particularly when the vehicle is involved in a collision, or is parked or driven during high wind conditions"—were not credible on their face. High wind conditions do not obtain during most days in Los Angeles, there are many means by which a sign may be safely and solidly attached to a vehicle apart from those specifically listed in the ordinance, and a lawfully *parked* vehicle is not a likely cause of a collision.

- The ordinance regulates only one activity—leaving a vehicle with an attached sign parked or standing at an otherwise lawful location (i.e., at a place where a signless vehicle would be permitted to park or stand)—when there is no rational basis for concluding that a parked vehicle differs from a moving vehicle in terms of aesthetics and safety.

- The ordinance mandates particular methods by which a sign may be "permanently affixed" to a motor vehicle, even though any number of other methods are equally "permanent" in practical and equally unlikely to result in the sign becoming unattached.

  o For example, many delivery restaurants, such as those selling pizza, use their employees' own vehicles for delivery with a sign atop the vehicle bearing the restaurant's name or logo. Those signs serve the purpose of "identification" [and, incidentally, promotion of the brand] and are typically attached with magnets, strong suction cups, or a strap. None of those methods constitute permissible means to "permanently affix" the sign, but there is no reason to believe that the sign poses any danger of coming undone in transit. In view of the all-encompassing definition of "advertising" adopted by the Ninth Circuit in the *Lone Star* case, the same logic applies to team flags or banners borne on the vehicles of fans during a championship series to "advertise" their support for their team, or for that matter to "just married" banners attached to the cars of newlyweds to "advertise" their wedded bliss. Under the literal terms of the ordinance, all are subject to impound if parked anywhere in the City of Los Angeles, because their signs are not "permanently affixed."

- o Conversely, many objects or structures can be attached to or transported on vehicles in a non-"permanent" fashion—ladders strapped atop pickup trucks for transport, panes of glass carried on the external racks of a glass service truck—that pose as great or greater a risk to public safety as does an "advertising sign". Singling out signs *qua* signs, and only signs, for a limited list of acceptable means of attachment to a motor vehicle is not related to any particularized danger posed by signs as such.
- The overbreadth of this statutory scheme is also geographical, because the ordinance applies to the *entire City of Los Angeles*, an area encompassing some 470 square miles with approximately 6500 miles of streets. This form of overbreadth has caused particular concern in the Ninth Circuit:

> The Ordinance is also geographically overinclusive. The Ordinance applies citywide to all streets and sidewalks in the City, yet the City has introduced evidence of traffic problems only with respect to a small number of major streets and medians. The City has offered no evidence to justify extending its solicitation ban throughout the City in such a sweeping manner. Because the burden rests on the City to submit evidence in support of its position, we cannot simply assume that the City's other streets, alleys, and sidewalks allegedly suffer from similar solicitation-related traffic problems. By applying the Ordinance citywide to all streets, alleys, and sidewalks, the City has burdened

Notice of Motion and Motion for Summary Judgment [Ammari] - 24

substantially more solicitation speech than is reasonably necessary to achieve its purpose. [Citations.]

*Comite de Jornaleros*, *supra*, 657 F.3d at p. 949 (9th Cir. 2011). Even if the interests it purports to advance were truly compelling, a citywide ban on an entire class of motor vehicle is too blunt an instrument with which to address it.

### *Conclusion*

Because this ordinance, on its face, is a direct, content-based restriction on speech, it cannot stand unless it is necessary to a compelling governmental interest. No such compelling interest can be identified here, or demonstrated by the City of Los Angeles. If, in the alternative, the Court finds that this ordinance is not content based, it is still insufficiently fine tuned to be deemed a *reasonable* regulation of the time, place and manner of speech activity. On that alternative basis as well, it does not withstand constitutional scrutiny and should be invalidated as a violation of the plaintiff's First Amendment rights. Summary judgment should be granted in favor of plaintiff, the ordinance and its authorizing statute should be declared unconstitutional and unenforceable, and a permanent injunction should issue prohibiting enforcement of these enactments.

DATED: November 7, 2013          WALLACE, BROWN & SCHWARTZ


                                 */s/ George M. Wallace*
                                 by GEORGE M. WALLACE
                                 Attorneys for Plaintiff SAMI AMMARI

Notice of Motion and Motion for Summary Judgment [Ammari] - 25