MICHAEL N. FEUER, City Attorney (SBN 111529)
**LAURIE RITTENBERG**, Assistant City Attorney (SBN 106683)
**KIMBERLY A. ERICKSON**, Deputy City Attorney (SBN 213634)
200 N. Main Street, City Hall East, Room 916
Los Angeles, CA 90012
Telephone (213) 473-6848
Facsimile (213) 473-6818
Kimberly.Erickson@lacity.org

Attorneys for Defendant
**CITY OF LOS ANGELES**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONE STAR SECURITY & VIDEO, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES, et al. <br><br> Defendants. | Case No. : CV 11-02113 ODW (MRW) <br><br> **DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [AMMARI]** |
| SAMI AMMARI, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES, <br><br> Defendant. | [Filed Concurrently with Notice of Motion and Motion, Separate Statement of Uncontroverted Facts and Conclusions of Law, Request for Judicial Notice and [Proposed] Judgment] <br><br> Date:   December 9, 2013 <br> Time:   1:30 p.m. <br> Ctrm:   11 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.     INTRODUCTION .............................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................. 2

III.   PROCEDURAL HISTORY ............................................................................... 2

IV.    STANDARD OF REVIEW ................................................................................ 3

      A.     LEGAL STANDARD FOR SUMMARY JUDGMENT ............................. 3

V.     ARGUMENT ...................................................................................................... 4

      A.     PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR DUE PROCESS AND FREE SPEECH VIOLATIONS UNDER THE FIRST AND FOURTEENTH AMENDMENTS MUST FAIL ......................................... 4

            1.     Section 87.54 Is Facially Valid Under Both Federal and State Law ....... 4

            2.     Section 87.54 Is A Content Neutral, Reasonable Time, Place And Manner Restriction And, As Such, Is Narrowly Tailored To Serve A Significant Government Interest, Leaving Open Alternative Channels For Communication ....................................................................... 5

                a.     Section 87.54 Is Content-Neutral, As It Regulates The Manner of Speech And Not Its Content ..................................................................... 5

                b.     Section 87.54 is Narrowly Tailored to Serve a Significant Government Interest ......................................................................... 8

                c.     Section 87.54 Allows Adequate Alternative Channels of Expression ................................................................................... 10

                d.     There is no Substantive Due Process Because There Is No First Amendment Violation ................................................................... 12

                e.     Section 87.54 Is Not Substantially Overbroad ................................ 13

i

B.    PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR VIOLATION OF PLAINTIFF'S PRIVILEGES OR IMMUNITIES UNDER FEDERAL LAW MUST ALSO FAIL ............................................................................... 14

C.    PLAINTIFF'S THIRD CLAIM FOR RELIEF FOR DUE PROCESS AND FREE SPEECH VIOLATIONS UNDER THE CALIFORNIA CONSTITUTION HAVE NO MERIT ......................................................... 16

   1.    Plaintiff's Free Speech Claim Under the California Constitution Fails Because His First Amendment Claim Under the United States Constitution Fails ............................................................................ 16

      a.    Plaintiff's Right To Due Process Claim Under Article 1 Section 7 of the California Constitution Must Fail ................................................... 17

   2.    Plaintiff Is Precluded From Seeking Monetary Damages Under California's Free Speech Clause ................................................................ 18

D.    PLAINTIFF'S FOURTH CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S PRIVILEGES OR IMMUNITIES UNDER CALIFORNIA LAW HAVE NO MERIT ....................................................................... 18

E.    THE CITY OF LOS ANGELES IS A PUBLIC ENTITY AND THEREFORE NOT LIABLE FOR PUNITIVE DAMAGES ..................... 19

F.    PLAINTIFF CANNOT MAINTAIN ANY SECTION 1983 CLAIM AGAINST THE CITY HAVING ALLEGED NO ACTIONABLE OFFICIAL CUSTOM, POLICY OR PRACTICE AND THEREFORE SUMMARY JUDGMENT SHOULD BE GRANTED ............................... 19

V.    CONCLUSION ................................................................................. 20

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Cases

*Acosta v. City of Costa Mesa*
694 F.3d 960, 970-971 (9th Cir. 2012) .......................................................... 13

*Albright v. Oliver*
510 U.S. 266, 273 (1994) .............................................................................. 12

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 248 (1986) ........................................................................... 3, 4

*Armendariz v. Penman*
75 F.3d 1311, 1319 (9th Cir. 1996) (en banc ............................................... 12

*Boos v. Barry*
485 U.S. 312, 320-321 (1988) ........................................................................ 6

*Broadrick v. Oklahoma*
413 U.S. 601, 630 (1973) .............................................................................. 13

*Celotex Corp. v. Catrett*
477 U.S. 317, 323 (1986) ................................................................................ 3

*Chan v. Judicial Council of California*
199 Cal.App.4th 194, 201 (2011).................................................................. 17

*Chapman v. Houston Welfare Rights Org.*
441 U.S. 600, 617 (1979) .............................................................................. 19

*Children of the Rosary v. City of Phoenix*
154 F.3d 972, 980 (9th Cir. 1998).................................................................. 6

*City of Newport v. Fact Concerts, Inc.*
453 U.S. 247, 271 (1981) .............................................................................. 19

iii

*Clark v. Comm. for Creative Non-Violence*
468 U.S. 288, 293 (1984) ........................................................... 10

*Collins v. Harker Heights*
503 U.S. 115 (1992). ................................................................. 20

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
657 F.3d 936, 945 (9th Cir. 2011) ................................................. 5

*Corales v. Bennett*
567 F.3d 554, 569 (9th Cir. 2009) ................................................ 12

*Degrassi v. Cook*
29 Cal.4th 333 (2002) .............................................................. 17

*Emeldi v. University of Oregon*
673 F.3d 1218, 1233 (9th Cir. 2012) .............................................. 3

*Fashion Valley Mall, LLC v. N.L.R.B.*
42 Cal.4th 850, 865 (2007) ....................................................... 16

*Foti v. City of Menlo Park*
146 F.3d 629, 635 (9th Cir. 1998) ................................................. 5

*Gable v. City of Chicago*
296 F.3d 531, 537 (7th Cir. 2002) ................................................ 20

*Gay-Straight Alliance Network*
262 F. Supp.2d at 111 .............................................................. 19

*Graham v. Connor*
490 U.S. 386, 394-95 (1989)) ..................................................... 12

*Hague v. Committee for Industrial Organization*
307 U.S. 496, 520, fn. 1 (1939) .............................................. 14, 15

*Hill v. Colorado*
530 U.S. 703, 726 (2000) ........................................................... 8

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

*Hodgers-Durgin v. de la Vina*
199 F.3d 1037 (9th Cir. 1999)................................................................ 13

*Honolulu Weekly, Inc. v. Harris*
298 F.3d 1037, 1043 (2002) ............................................................... 5, 8

*Hufford v. McEnaney*
249 F.3d 1142, 1151 (9th Cir. 2001)....................................................... 12

*Kaahumani v. HawaiI*
682 F.3d 789, 805 (9th Cir. 2012)....................................................... 10, 11

*Katzberg v. Regents of the Univ. of Cal.*
29 Cal.4th 300, 321 (2002)................................................................. 18

*Kovacs v. Cooper*
336 U.S. 77, 88-89 .......................................................................... 10

*Las Lomas Land Co., LLC*
177 Cal.App.4th at 856...................................................................... 17

*Lone Star Security and Video Inc. v. City of Los Angeles, et al.*
520 Fed. Appx. 505, 506 (2013) .............................................. 3, 6, 7, 14, 17

*Los Angeles Alliance for Survival v. City of Los Angeles*
22 Cal. 4th 352, 367 (2000)................................................................ 4, 16

*Madsen v. Women's Health Center*
512 U.S. 753, 763 (1994)...................................................................... 5

*Maldonado v. Morales*
556 F.3d 1037, 1046 (9th Cir. 2009)...................................................... 13, 14

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*
475 U.S. 574, 586 (1986) ...................................................................... 3

*McDonald v. City of Chicago, Ill.*
130 S.Ct. 3020, 3030-31 (2010)............................................................ 15

v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

*Members of Cty. Council of L.A. v. Taxpayers for Vincent*
466 U.S. 789, 800-01 (1984)...................................................................................... 13

*Metromedia, Inc. v. City of San Diego*
453 U.S. 490, 507-08 (1981) ...................................................................................... 8, 9

*Monell v. Dep't of Soc. Servs. of New York*
436 U.S. 658, 691-94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)............................... 19, 20

*People v. Gallegos*
54 Cal.App.4th 252, 263 (1997).................................................................................. 17

*Prigmore v. City of Redding*
211 Cal.App.4th 1322, 1336 ....................................................................................... 16

*R.A.V. v. City of St. Paul*
505 U.S. 377, 386 (1992) ............................................................................................ 5

*Reed v. Town of Gilbert, Ariz.*
587 F.3d 966, 977 (9th Cir. 2009).............................................................................. 5, 6, 8

*Ricci v. DeStefano*
557 U.S. 557, 586 (2009) ............................................................................................ 3

*Ruvalcaba v. City of Los Angeles*
167 F.3d 514, 523 (9th Cir.1999)............................................................................... 19

*Schenck v. United States*
249 U.S. 47, 52 (1919) ................................................................................................ 9

*Semegen v. Weidner*
780 F.2d 727, 732 (9th Cir. 1985) .............................................................................. 3

*Showing Animals Respect and Kindness v. City of West Hollywood*
166 Cal. App. 4th 815 (Cal. Ct. App. 2008) ............................................................. 6, 7, 11, 16

*Slaughter-House Cases*
83 U.S. 36, 79 (1872) .................................................................................................. 14, 15

*Smith v. City of Fontana*
818 F.2d 1411, 1419-1420 (9th Cir. 1987) ........................................................ 13

*Taxpayers for Vincent*
466 U.S. at 801 ................................................................................................... 13

*Turner Broadcasting System, Inc., et al., v. Federal Communications Commission et al.,*
512 U.S. 622, 643 (1994) .................................................................................... 5

*Ward v. Rock Against Racism*
491 U.S. 781, 791 (1989) .................................................................................. 5, 9

*West Hollywood*
166 Cal.App.4th at 824 ........................................................................................ 9

**Federal Statutes**

42 U.S.C. § 1983 ....................................................................................... 2, 19, 20

Fed. R. Civ. Proc. 56(c) ...................................................................................... 3

Fed. R. Civ. Proc. 56(e) ...................................................................................... 3

**Codes**

Civil Code § 3294 .............................................................................................. 19
Government Code §818 ................................................................................... 7, 19
Municipal Code §87.54 ....................... 1, 2, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18
Vehicle Code § 21100(m) ..................................................................................... 2
Vehicle Code §395.5 ............................................................................................ 2

**Constitutional Provisions**

California Constitution Art. 1 § 7 ....................................................................... 18

U.S. Const. Amend. XIV, § 1, cl. 2 ..................................................................... 14

U.S. Const.Article I, §  2 ....................................................................................... 4

**Other Authorities**

Ordinance No. 182083 .......................................................................................... 2
Cal. Assembly Bill 2756 ..................................................................................... 2, 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Communities across California have experienced an increase in mobile billboard advertising displays ("mobile billboards"), which are portable advertising signs on vehicles or trailers. These mobile billboards, attached to unhitched trailers or attached to vans or trucks, are transported to a location where they are parked on city streets for hours, and often several days. These billboards have become a source of visual blight, have reduced on-street parking and continue to create a significant public safety hazard. In order to address the dangers to pedestrians and drivers caused by these transitory advertising signs within the City of Los Angeles, ordinances prohibiting the parking of mobile billboard advertising displays and the manner in which these signs are maintained on the vehicle have been implemented and enforced.

One such ordinance is Los Angeles Municipal Code §87.54 ("Section 87.54" or "§87.54"). This ordinance prohibits all signs on *motorized* vehicles unless those signs are "permanently affixed" in such a manner as to make the motor vehicle safe to be driven moved or parked on the public streets. The term "permanently affixed" is defined in the ordinance to mean that the signs must be painted directly upon the vehicle or be an integral part of or fixture of the motor vehicle for permanent decoration. Furthermore, the ordinance states that the advertising signs cannot extend the overall length, width or height of the vehicle.

Plaintiff Sami Ammari ("Plaintiff" or "Ammari") attaches advertising signs to his vehicles, and then parks those vehicles on the streets of Los Angeles for days at a time, for the sole purpose of advertising his businesses. (Compl., 12:21-25). The signs are not "permanently affixed" as required under the law, but rather are precariously and haphazardly attached to his motor vehicles with bolts. (Compl., 2:20-24, Exhibit "A"). Plaintiff alleges that Defendant, the City of Los Angeles ("Defendant" or "City"), impounded his vehicle only because it bore signage, and that it is the intent and policy of the City of Los Angeles to impound his and similar vehicles for no reason other than the

1

presence of signage. (Compl., 13:11-15).

## II.   STATEMENT OF FACTS

On August 25, 2010, California Assembly Bill 2756 was passed by the Legislature.  It was approved by the Governor on September 30, 2010, and it became effective January 1, 2011.  (Defendant's Separate Statement of Uncontroverted Facts and Conclusions of Law ("SSUF"), No. 1).  In the 2011 legislative session, the California legislature passed Assembly Bill 1298, which was subsequently signed into law, was approved by the Governor on October 7, 2011 and became effective on January 1, 2012. (SSUF, No. 2).  Assembly Bill 1298 amended Vehicle Code section 21100 and added subsection (p) which allows a local government to regulate advertising signs on any motor vehicle parked or left standing upon a public street, except for signs painted directly upon or permanently affixed to the vehicle for permanent decoration or display that do not extend the overall length, width or height of the vehicle.  (SSUF, No. 4).

On March 7, 2012, the City Council of the City of Los Angeles adopted Ordinance No. 182083 creating new §87.54 of the Los Angeles Municipal Code regulating advertising signs on *motor* vehicles parked or left standing on any public street or public lands in the City of Los Angeles.  (SSUF, No. 3).  On April 17, 2013, the Los Angeles City Council adopted Ordinance No. 182516 amending, §87.54 of the Los Angeles Municipal Code to conform to recent amendments made by the State Legislature to California Vehicle Code Section 21100(p)(2) regulating advertising signs on motor vehicles. (SSUF, No. 6).  Plaintiff asserts facial challenges to §87.54 alleging that the ordinance is unconstitutional because it is a content-based restriction on speech and is overbroad.  Plaintiff is pursuing only a facial challenge to Los Angeles Municipal Code §87.54 and not an "as applied" challenge.  (SSUF, No. 7).

## III.   PROCEDURAL HISTORY

On May 29, 2012 Plaintiff filed his verified complaint pursuant to 42 U.S.C. § 1983, against Defendant, asserting that the City's regulation of advertising signs on motor

2

vehicles violates the First and Fourteenth Amendments of the United States Constitution. In addition, Plaintiff has alleged §87.54 violates his Privileges and/or Immunities of Citizenship under federal and state law because it prohibits the parking of these mobile billboards only because they bear speech content. As a result, Plaintiff claims he is prevented him from engaging in lawful and protected speech and commercial speech within the City. (Compl., 14:4-11). On September 13, 2012, Plaintiff's case was consolidated with *Lone Star Security and Video, Inc. v. City of Los Angeles.*, CV 11-02113.

## IV.   STANDARD OF REVIEW

## A.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A "genuine dispute" about a "material fact" exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the inferences it draws from the underlying facts in the light most favorable to the nonmoving party opposing summary judgment. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Matsushita Elec. Industrial Co.*, 475 U.S. at 587. Once the moving party proves that no genuine issue of material fact exists, the burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. Proc. 56(e)). The nonmoving party may not rest on its own conclusory allegations or mere assertions; it must set forth non-speculative evidence of specific facts. *Emeldi v. University of Oregon*, 673 F.3d 1218, 1233 (9th Cir. 2012). A party is entitled to summary judgment where the documentary evidence produced by the

parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247(1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue for trial. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita*).

## V. ARGUMENT

## A. PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR DUE PROCESS AND FREE SPEECH VIOLATIONS UNDER THE FIRST AND FOURTEENTH AMENDMENTS MUST FAIL

### 1. Section 87.54 Is Facially Valid Under Both Federal and State Law

Section 87.54 is facially valid under both the First Amendment[1] to the United States Constitution and Article I, Section 2 of the California Constitution because it is *content-neutral*, and therefore, a reasonable time, place and manner restriction. Article I, Section 2 of the California Constitution ("the free speech clause") provides that, "Every person may speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." As such, the free speech clause is worded more expansively than the First Amendment, however, that does not mean it is broader than the First Amendment in all its applications. *Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal. 4th 352, 367 (2000). Indeed, the facial validity analysis is coextensive under both the First Amendment and the free speech clause. *See id.* at 364-369. Therefore, the facial validity of §87.54 under both the First Amendment and the free speech clause is discussed simultaneously below.

---

[1] The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

## 2. Section 87.54 Is A Content Neutral, Reasonable Time, Place And Manner Restriction And, As Such, Is Narrowly Tailored To Serve A Significant Government Interest, Leaving Open Alternative Channels For Communication

For an ordinance to qualify as a time, place, or manner restriction on expression, the restriction "must (1) be content neutral; (2) be 'narrowly tailored to serve a significant government interest;' and (3) 'leave open ample alternative channels of communication.'" *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1043 (2002) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)); *See also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011)(en banc).

### a. Section 87.54 Is Content-Neutral, As It Regulates The Manner of Speech And Not Its Content

The preliminary inquiry in determining whether a regulation is a reasonable time, place, or manner restriction, unrelated to speech, is whether such a regulation is content neutral. *Honolulu Weekly*, 298 F.3d at 1043. The controlling issue in determining content neutrality, then, is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.* In other words, to be content-neutral the government must adopt a regulation of speech "without reference to the content of the regulated speech." *Madsen v. Women's Health Center*, 512 U.S. 753, 763 (1994); *See also Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). Furthermore, "the government may not regulate [speech] based on hostility -- or favoritism -- towards the underlying message expressed." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992). To be content-neutral, a regulation must not "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed." *Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 977 (9th Cir. 2009)(quotation marks and citation omitted).

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

Case law requires a careful look at the government's purpose in adopting the regulation. If a regulation "serves purposes unrelated to the content of expression," it will be deemed content-neutral, "even if it has an incidental effect on some speakers or messages but not others." *See Ward*, 491 U.S. at 791. On their face, content-neutral regulations distinguish only on the basis of the manner in which messages are transmitted, not on the basis of the messages themselves. *See Turner Broadcasting System, Inc., et al., v. Federal Communications Commission et al.*, 512 U.S. 622, 643 (1994).

While a content-based regulation bars all discussion of a particular topic, no matter what view is expressed, a viewpoint-based regulation only bars one or more viewpoints about a particular subject matter. Thus, "viewpoint discrimination is a form of content discrimination in which 'the government targets not subject matter, but particular views taken by speakers on a subject.'" *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 980 (9th Cir. 1998). *See Boos v. Barry*, 485 U.S. 312, 320-321 (1988) (holding the provision prohibiting the display of any sign within 500 feet of a foreign embassy if the sign brought the foreign government into "public odium" or "public disrepute" to be content-based because who could picket in front of the embassy depended entirely on whether their picket signs were critical of the foreign government or not). As a result, "[a] law that 'confer[s] or impose[s] burdens on speech without reference to the ideas or views expressed' is normally content neutral." *Id.* at 1043-44 (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642-43 (1994)).

The Ninth Circuit Court of Appeals recently affirmed this Court's ruling that the mobile billboard ordinances in the consolidated case, *Lone Star Security & Video, Inc. v. City of Los Angeles*, are content-neutral because they do not "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed." *Lone Star Security and Video Inc. v. City of Los Angeles, et al.*, 520 Fed. Appx. 505, 506 (2013) (quoting *Reed v. Town of Gilbert, Ariz.*, 587 F.3d 966, 977 (9th Cir. 2009). The Circuit Court held that the ordinances "merely distinguish between vehicles whose primary purpose is

6

advertising and those that have a different primary purpose, such as carrying passengers or transporting cargo." *Lone Star Security and Video*, 520 Fed. Appx. at 506. Rather than looking at the content of the mobile billboard, the Court found that the enforcing officer need only decide whether the vehicle's primary purpose is to display a billboard or sign to the public. *Id.* Furthermore, advertising is generally understood to mean the "action of calling something to the attention of the public." *Id.* (quoting *Showing Animals Respect and Kindness v. City of West Hollywood*, 166 Cal. App. 4th 815 (Cal. Ct. App. 2008)). Finally, the Court held that the content of any message conveyed on the mobile billboard is irrelevant and therefore, even a blank billboard with no visible message could potentially violate the City Ordinances. *Lone Star Security and Video*, 520 Fed. Appx. at 506.

Similarly, in *Showing Animals Respect and Kindness v. City of West Hollywood*, 166 Cal.App.4th 815, 823 (2008) a West Hollywood ordinance made it "unlawful for any person to conduct, or cause to be conducted, any mobile billboard advertising upon any street, or other public place within the city in which the public has a right to travel." *Id.* at 819. The ordinance went on to define "mobile billboard advertising," as including "any vehicle, or wheeled conveyance which carries, conveys, pulls, or transports any sign or billboard for the primary purpose of advertising." *Id.* In rejecting the appellant's argument that the ordinance "favor[ed] commercial speech over noncommercial speech," the court reasoned that the ordinance applied "to all vehicles whether they carry a commercial or noncommercial message, "because both are prohibited from driving through the streets of West Hollywood for the primary purpose of advertising." *Id.* at 823. The court further noted that the ordinance prohibited a vehicle's carrying, conveying, pulling, and transporting. *Id.* These "are active verbs showing that the ordinance is concerned with the speaker's actions, not the content of the speech." *Id.*

The ordinances and definition of "mobile billboard advertising" in *Lone Star* and in *Showing Animals Respect and Kindness* are similar to §87.54. The only difference is that §87.54 regulates advertising signs on *motor* vehicles while the ordinances in the cited

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

cases regulate advertising signs on *non-motorized* vehicles.  In denying *Lone Star*'s motion for preliminary injunction, this Court held that the ordinances at issue were not content based, but rather content neutral because "advertising" refers to an activity and not to content. (Order, 3:6-13).

In this case, §87.54 regulates "advertising" signs, but draws no distinctions based on the content of the speech or the viewpoints expressed.  Rather, the regulation focuses on and applies to *how* the advertising sign is attached to a motor vehicle or the *manner* in which the contents of the advertising sign are displayed on that vehicle.  The ordinance states nothing about the content of the signs or the views expressed and it makes no distinction between commercial signs, non-commercial signs and other advertising signs. *See, e.g., Metromedia, Inc. v. City of San Diego*, 453 U.S. 490.

Furthermore, a literal reading of §87.54 presents no message or idea that is being singled out or prohibited.  Section 87.54 applies to any signage that is not "permanently affixed" to the motor vehicle.  The ordinance prohibits the signage from extending beyond the overall length, width or height of the vehicle.  (SSUP, No.  ) Therefore, the ordinance applies to any advertising sign on a motor vehicle, regardless of the advertisement that is being presented, commercial or non-commercial.  Indeed, a vehicle that bears a sign that is not permanently affixed and extends the length, height and length of the vehicle is in violation of the ordinance, regardless of what message is expressed on that sign.  Despite Plaintiff's assertions, a sign bearing no speech or content at all, but just a blank sign, attached similarly to how Plaintiff's signs were attached, would violate the ordinance because the sign is not "permanently affixed" under the definition of the law. (SUPP, No.  ) .  Therefore, §87.54 is a content-neutral regulation and not a content-based regulation as Plaintiff contends.

b.  **Section 87.54 is Narrowly Tailored to Serve a Significant Government Interest.**

Once it is established that a particular regulation is content neutral, the

8

second inquiry in determining whether the regulation is a reasonable time, place, or manner restriction is whether it is "narrowly tailored to serve a significant government interest." *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1043 (quoting *Foti*, 146 F.3d at 635). Narrow tailoring means that enacted regulations "are not substantially broader than necessary to achieve the government's interest." *Reed*, 587 F.3d at 979. Narrow tailoring "does not require the government to adopt the least restrictive or least intrusive means of serving the statutory goal." *Honolulu Weekly*, 298 F.3d at 1045 (quoting *Hill v. Colorado*, 530 U.S. 703, 726 (2000)). Since the U.S. Supreme Court's earliest decisions concerning the freedom of speech, the state may curtail speech when necessary to advance a significant and legitimate state interest. *Schenck v. United States*, 249 U.S. 47, 52 (1919). "A restriction on a medium of speech serves a significant government interest if the interests at issue 'would be achieved less effectively absent the regulation.'" *West Hollywood*, 166 Cal.App.4th at 824 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

In California, the state legislature found it necessary to empower local jurisdictions to address the serious public nuisance and public safety hazards that mobile billboard advertising displays pose to the community and public at large. In passing A.B. 2756, permitting local cities to pass ordinances regulating mobile billboard advertising displays, the California Legislature declared:

> Not only are mobile billboards a visual blight, but they pose a significant safety hazard when motorists are forced to veer around them into the next lane of traffic. Mobile billboards also reduce available on-street parking and impair the visibility of pedestrians and drivers.

A.B. 2756, Stat.2010, Section 1, c. 615 (2010) at (b). It is undisputed that traffic safety and aesthetics constitute substantial government interests. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) (holding that traffic safety and city aesthetics are "substantial governmental goals").

9

Here, the same governmental interests advanced by regulating mobile billboard advertising displays apply to the advertising signs regulated in §87.54. Because Plaintiff's advertising signs are not permanently affixed to his vehicle, but are bolted in to the body of the vehicle, the possibility of these signs coming unhinged during a collision or during high winds poses a significant safety hazard to pedestrians and drivers alike. Furthermore, as can be seen in Exhibit 1 to Plaintiff's Verified Complaint, the fact that the back sign extends the length of the vehicle portrays the inherent dangerous nature of these signs and how they pose a danger of coming unhinged and causing injury to drivers and pedestrians. Furthermore, Exhibit 1 shows how these vehicles contribute to the visual blight in these communities, reduce on-street parking and can attract vandals to these exposed signs. Thus, these interests are advanced at the expense of Ammari's business, but not at the expense of free speech. Indeed, in adopting §87.54, the City balanced an individual's interest in advertising its product or business with the interests of city aesthetics and traffic safety by prohibiting only advertising signs that are not "permanently affixed" to the vehicle. No other manner of advertising is foreclosed by this ordinance.

### c.    Section 87.54 Allows Adequate Alternative Channels of Expression

The final inquiry in determining whether an ordinance is a reasonable time, place, or manner restriction on speech is whether the ordinance "leave[s] open ample alternative channels for communication." *Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). It should first be noted that "the First Amendment does not guarantee…the most effective means of communication, only the means to communicate effectively." *Id.* Indeed, in *Kovacs v. Cooper*, the United States Supreme Court noted:

> [T]hat more people may be more easily and cheaply reached by sound trucks, perhaps borrowed without cost from some zealous supporter, is not enough to call forth constitutional protection for what those charged with public welfare reasonably think is a nuisance when easy means of publicity are open.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

336 U.S. 77, 88-89 (1949) (upholding an ordinance prohibiting sound trucks from broadcasting in a "loud and raucous manner" on the streets). Indeed, "The Supreme Court generally will not strike down a governmental action for failure to leave open ample alternative channels of communication unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting." *Kaahumani v. Hawaii*, 682 F.3d 789, 805 (9th Cir. 2012) (upholding an ordinance requiring persons to obtain a permit to hold a commercial wedding on a state beach).

In *Showing Animals Respect and Kindness*, the court rejected appellant's argument that the ordinance leaves "no alternate means of communication that comes close to [mobile billboard advertising] in terms of cost efficiency, strength of the message, and visibility." *Showing Animals Respect and Kindness*, 166 Cal.App.4th at 825. In holding that the ordinance leaves open ample alternative channels of communication, the court noted that the appellant offered "no explanation why it could not use other methods of communication such as advertising on buses and taxis, flyers, direct mailings, newspaper ads, and speeches in public places." *Id.*

Similarly, here, §87.54 does not "foreclose an entire medium of public expression across the landscape of a particular community or setting." *Kaahumani*, 682 F.3d at 805. Indeed, while it may be more cost effective for Plaintiff to advertise his businesses utilizing temporary and removable signs that can be interchanged with other signs on that same vehicle, rather than paying to permanently affix one advertising sign per vehicle, the First Amendment does not guarantee Plaintiff the most cost effective method of communication. *Showing Animals Respect and Kindness*, 166 Cal.App.4th at 825. Like the appellant in *Showing Animals Respect and Kindness* , who had other advertising options available to him, the Plaintiff here can "permanently affix" advertising signs by painting or decaling those same advertisements directly onto the body of his vehicle. Section 87.54 does not foreclose his ability to advertise his businesses, rather it only forecloses the manner in which he desires to do it. Additionally, there are other methods

11

of communication open to Plaintiff through which he can advertise his business such as signs on bus shelters, stationary billboards, and billboards on buses, taxis or trucks just to name a few.

Thus, §87.54 leaves open ample alternative channels of communication. As a result, §87.54 is a content neutral reasonable time, place, or manner restriction and is not subject to strict scrutiny under First Amendment principles. This Court should grant Defendant City of Los Angeles' motion for summary judgment.

### d. There is no Substantive Due Process Because There Is No First Amendment Violation

If, in a §1983 suit, the plaintiff's claim can be analyzed under an explicit textual source of rights in the Constitution, a court should not resort to the "more subjective standard of substantive due process." *Armendariz v. Penman*, 75 F.3d 1311, 1319 (9th Cir. 1996) (en banc) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). In this case, because the First Amendment explicitly covers Ammari's claim, the First Amendment, "not the Fourteenth Amendment's guarantee of substantive due process, should guide the analysis of the [plaintiff's] claims." *Armendariz*, 75 F.3d at 1320; *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (affirming the *Graham* rule where the plaintiff alleged that the defendants violated his substantive due process rights by initiating a criminal prosecution without probable cause to believe he had violated state law). *Id.* at 810. The Court noted that "the Framers considered the matter of pretrial deprivations of liberty, and drafted the Fourth Amendment to address it." *Id.* at 813. Because an explicit textual provision of the constitution protected against the area of governmental conduct challenged by the plaintiff, *Graham* precluded the plaintiff from obtaining additional relief under the notion of substantive due process. *Id.* at 813-14; *See Graham v. Connor*, 490 U.S. 386, 395 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."); *Corales v. Bennett*, 567

12

F.3d 554, 569 (9th Cir. 2009) ("Plaintiffs agree that our denial of their First Amendment claim necessarily forecloses their substantive due process claim on the grounds of the alleged free speech violation"); *See Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) ("If, in a §1983 suit, the plaintiff's claim can be analyzed under an explicit textual source of rights in the Constitution, a court should not resort to the more subjective standard of substantive due process.") (internal citation omitted). Plaintiff's substantive due process claim also fails, as there is no underlying dependent constitutional deprivation. *See Smith v. City of Fontana*, 818 F.2d 1411, 1419-1420 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

In this case, it is clear based upon the facial validity analysis of §87.54 set forth above in section V.A.2.a, b, and c, the ordinance is a content-neutral, reasonable time, place and manner restriction and there is no First Amendment violation. Therefore, because the facts of the case could be analyzed under the First Amendment, this court does not need to utilize a more subjective standard under due process and Plaintiff's due process claim is foreclosed.

### e. Section 87.54 Is Not Substantially Overbroad

Plaintiff alleges that §87.54 is overbroad and ultimately bans constitutionally protected speech because it "prohibits a particular mode of speech and communication on a blanket basis…". (Compl., 14:17-22). However, in order for a statute to be facially invalid on overbreadth grounds, it must be *substantially* overbroad. *Acosta v. City of Costa Mesa*, 694 F.3d 960, 970-971 (9th Cir. 2012), (quoting *Members of Cty. Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984)). There must be a "realistic danger that the statute itself will significantly compromise recognized *First Amendment* protections of parties not before the Court." *Id.* (quoting *Taxpayers for Vincent*, 466 U.S. at 801). A statute will not be held invalid simply because we can "conceive of a single impermissible application." *Id.* citing *Broadrick v. Oklahoma*, 413 U.S. 601, 630 (1973)).

13

A city's foreclosing an entire media may, as here, be completely free of content discrimination, but "the danger they pose to the freedom of speech is readily apparent – by eliminating a common means of speaking, such measures can suppress too much information." *Maldonado v. Morales*, 556 F.3d 1037, 1046 (9th Cir. 2009). In *Maldonado*, the Ninth Circuit rejected appellant's argument that a content neutral ordinance prohibiting off premises commercial billboards was unconstitutionally overbroad. *Id.* In upholding the ordinance, the court noted that "the [ordinance] [did] not ban all signs, or even nearly all signs, but only off premises commercial billboards." *Id.* The court further noted that the ordinance was "substantially less restrictive than any the Supreme Court [had] struck down" under the overbreadth doctrine. *Id.*

Similarly, here, §87.54 does not ban all signs, or even nearly all signs, but only those advertising signs that are not "*permanently affixed*" to the vehicle and that extend the overall length, width, or height of the vehicle. As the Court can see from Plaintiff's Exhibit "A" to his Complaint, his advertising signs do indeed extend the overall length of the vehicle. The photograph itself shows how haphazardly Plaintiff's signs are attached onto his vehicles, claiming they are "permanently affixed" when they obviously do not meet the definition of "permanently affixed" in §87.54. (SSUP No. 5). What's more, §87.54 does not bar plaintiff from purchasing advertising space on stationary billboards, bus benches, buses, or taxis to convey whatever message he desires. *Lone Star Security and Video Inc. v. City of Los Angeles, et al.*, 520 Fed. Appx. 505, 507. Thus, under *Maldonado*, §87.54, a content neutral ordinance, is not overbroad simply because it "forecloses" the advertising sign on a motor vehicle medium of expression. Therefore, §87.54 does not "suppress too much speech." *Id.*

**B.    PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR VIOLATION OF PLAINTIFF'S PRIVILEGES OR IMMUNITIES UNDER FEDERAL LAW MUST ALSO FAIL**

The Privileges or Immunities Clause of the Fourteenth Amendment states the following: "No State shall make or enforce any law which shall abridge the privileges or

14

immunities of citizens of the United States." U.S. Const. Amend. XIV, § 1, cl. 2. The Privileges or Immunities clause of the Fourteenth Amendment protects those privileges and immunities peculiar to citizenship of the *United States*, and not to citizenship of a particular state therein. *Slaughter-House Cases*, 83 U.S. 36, 79 (1872). These privileges and immunities are limited to that class of interests "growing out of the relationship between the citizen and the national government created by the Constitution and federal laws." *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 520, fn. 1 (1939). While these rights defy enumeration and definition, it is said to be the rights of a citizen of the *United States* to:

> Come to the seat of government to assert any claim he may have upon that government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions . . . to access its seaports, through which all operations of foreign commerce are conducted, to the subtreasuries, land offices, and courts of justice in the several States.

*Slaughter-House Cases*, 83 U.S. at 79. Appeals to the United States Supreme Court to extend the Privileges or Immunities Clause of the Fourteenth Amendment have been "uniformly rejected," and even those "basic privileges and immunities secured against federal infringement by the first eight amendments have been uniformly held *not* to be protected from state action" by the clause. *Hague*, 307 U.S. at 520, fn.1.

For many decades, the question of the rights protected by the Fourteenth Amendment against state infringement has been analyzed under the Due Process Clause of the Fourteenth Amendment, and not under the Privileges or Immunities Clause. *McDonald v. City of Chicago, Ill.* 130 S.Ct. 3020, 3030-31 (2010). Freedom of speech, therefore, is a privilege and immunity secured by the *due process* clause of the Fourteenth Amendment, and *not* the Privileges or Immunities clause of the Fourteenth Amendment. Thus, Plaintiff's Privileges or Immunities claims under the First and Fourteenth Amendment would commonly be analyzed under a due process framework.

15

However, because there is a textual analysis under the First Amendment as discussed in section V.A.2.a,b and c of this brief, a due process analysis is not necessary. Therefore, because Plaintiff's First Amendment claims fail for the reasons discussed in sections V.A.2.a, b, and c, Plaintiff's Privileges or Immunities claims under the United States Constitution must fail as well.

**C.** **PLAINTIFF'S THIRD CLAIM FOR RELIEF FOR DUE PROCESS AND FREE SPEECH VIOLATIONS UNDER THE CALIFORNIA CONSTITUTION HAVE NO MERIT**

    **1.** **Plaintiff's Free Speech Claim Under the California Constitution Fails Because His First Amendment Claim Under the United States Constitution Fails**

As stated in section IV.A.1, the free speech clause is worded more expansively than the First Amendment, however, that does not mean it is broader than the First Amendment in all its applications. *Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal. 4th 352, 367 (2000). Indeed, "despite this broader protection, in analyzing speech restrictions under the California Constitution, California courts employ the same time, place, and manner test as the federal courts." *Prigmore v. City of Redding*, 211 Cal.App.4th 1322, 1336. *See also Fashion Valley Mall, LLC v. N.L.R.B.*, 42 Cal.4th 850, 865 (2007) ("A content-neutral regulation of the time, place, or manner of speech is subjected to intermediate scrutiny to determine if it is '(i) narrowly tailored, (ii) serves a significant government interest, and (iii) leaves open ample alternative avenues of communication.'") (citing *Los Angeles Alliance for Survival*, 22 Cal.4th at 364)). *See e.g., Showing Animals Respect and Kindness v. City of West Hollywood* (2008) 166 Cal.App.4th 815, 819 (analyzing plaintiff's free speech claims under both United States and California Constitutions under a First Amendment analytical framework).

Thus, because analysis of §87.54 under California Constitution's free speech clause is coextensive with the First Amendment analysis, and based on the reasons

16

discussed above in section IV.A.2.a, b and c concerning Plaintiff's First Amendment claims, Plaintiff's claim that the Ordinances violate the free speech clause of Article 1 section 2 of the California Constitution must fail.

### a. Plaintiff's Right To Due Process Claim Under Article 1 Section 7 of the California Constitution Must Fail

The due process clause of the state and federal Constitutions, in their substantive aspect, "provide checks on the government's power to act unfairly or oppressively. Unless application of a statute impinges upon 'fundamental rights,' the initial question posed by a substantive due process challenge is whether the application is procedurally fair and reasonably related to a proper legislative goal." *People v. Gallegos*, 54 Cal.App.4th 252, 263 (1997). "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Chan v. Judicial Council of California*, 199 Cal.App.4th 194, 201 (2011). A substantive due process violation also requires some form of outrageous or egregious conduct constituting a "true abuse of power." *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 856. Indeed, the "arbitrary and capricious standard applicable in other contexts is a *lower* threshold than that required to establish a substantive due process violation." *Id.* at 855.

First, as discussed above in sections section V.A.2.a, b and c with respect to Plaintiff's free speech claims under the United States and California Constitutions, Plaintiff has not shown a deprivation of liberty by virtue of §87.54's application. Further, Plaintiff falls short of showing that the City of Los Angeles' enactment of §87.54 constituted a "true abuse of power." *Las Lomas Land Co., LLC*, 177 Cal.App.4th at 856. This conclusion is supported by this Court's and the Ninth Circuit's decision that the Cities' Ordinances are content neutral, and are reasonable time, place, and manner restrictions. Order 4:17-21; *Lone Star Security and Video Inc. v. City of Los Angeles, et al.*, 520 Fed. Appx. 505, 506 (2013). Indeed, if §87.54 meets the intermediate scrutiny standard, then they must, by necessity, be reasonably related to a proper legislative goal.

17

*Gallegos*, 54 Cal.App.4th at 263.

### 2.   Plaintiff Is Precluded From Seeking Monetary Damages Under California's Free Speech Clause

California's free speech clause does not give rise to claims for damages and therefore Plaintiff's state claims should be dismissed to the extent they seek damages of any kind.  In *Degrassi v. Cook*, 29 Cal.4th 333 (2002), the California Supreme Court ruled that there is no basis to recognize a constitutional tort action for damages for a violation of the state free speech clause. "We conclude that there is no indication in the language of [the free speech clause] nor any evidence in the history of that provision, from which we may find, within that provision, an implied right to seek damages for a violation of the free speech right set out therein." *Id.* at 342.  Therefore, Plaintiff's state claims under the free speech clause should be dismissed to the extent that Plaintiff seeks monetary damages of any kind (i.e., compensatory damages, punitive damages, etc.).

Furthermore, Plaintiff's claims under Article 1, § 7 of the California Constitution are also barred because that section confers no private right of action. *Katzberg v. Regents of the Univ. of Cal.*, 29 Cal.4th 300, 321 (2002).  ("We conclude that the materials that were before the voters when they adopted the current version of article I, section 7(a) in November 1974, provide no basis upon which to infer an intent that the provision itself permits an action for damages to remedy a violation of that clause.").

### D.   PLAINTIFF'S FOURTH CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S PRIVILEGES OR IMMUNITIES UNDER CALIFORNIA LAW HAVE NO MERIT

In addressing the merits of Plaintiff's claims, under privileges and immunities jurisprudence, "legislation that favors one class of citizens over another does not violate the clause unless the classification of citizens is unreasonable and arbitrary." *Id.* at 543. In *Flying Dutchman*, plaintiff asserted equal protection and privileges and immunities causes of action challenging a municipal code section exempting certain entities from a fifteen percent tax for every parking space in the City and County. *Id.* at 538.  The court

18

disposed of appellant's Privileges or Immunities Clause cause of action, concluding that the challenged municipal code was "rationally related to a legitimate government interest, and as such was not unreasonably arbitrary under the privileges and immunities clause of the state constitution." *Id.* at 543.

Therefore, due to the fact that §87.54 is narrowly tailored to serve a significant governmental interest as discussed above in Section V.A.2.b, the ordinance must also be rationally related to a legitimate government interest to defeat a claim under this clause. As such, Plaintiff's claim under California's Privileges or Immunities clause must fail.

**E.      THE CITY OF LOS ANGELES IS A PUBLIC ENTITY AND THEREFORE NOT LIABLE FOR PUNITIVE DAMAGES**

California Government Code § 818 states, "[n]ot withstanding any other provision of law, a public entity is not liable for damages awarded under § 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." Further, a "public entity cannot be sued under Section 1983 as a matter of law for punitive damages." *Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.*, 262 F.Supp.2d 1088, 1111 (E.D. Cal. 2001); see *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 523 (9th Cir. 1999). Additionally, "[f]or civil rights claims, the standard for punitive damages is the same for claims brought under Section 1983." *Gay-Straight Alliance Network*, 262 F. Supp.2d at 1111. Therefore, the City of Los Angeles cannot be sued for punitive damages under § 1983, and Plaintiff's claim for such damages is barred.

**F.      PLAINTIFF CANNOT MAINTAIN ANY SECTION 1983 CLAIM AGAINST THE CITY HAVING ALLEGED NO ACTIONABLE OFFICIAL CUSTOM, POLICY OR PRACTICE AND THEREFORE SUMMARY JUDGMENT SHOULD BE GRANTED**

Plaintiff fails to set forth any allegations in the Complaint to support an actionable §1983 claim against the City, let alone have any evidence to support such a claim. Section 1983 creates no statutory rights in and of itself, but is merely an enforcement

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT

vehicle for federally-secured rights derived from other sources. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). A municipality is not liable for a violation of constitutional rights unless a city officer's conduct is directly attributable to the city's policy or custom. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691-94 (1978). In other words, the Court must address two interrelated issues in analyzing a §1983 claim against a city: (1) whether the plaintiff's alleged harm was caused by a constitutional violation; and, if so, (2) whether the city can even be held responsible for that violation. *See Collins v. Harker Heights*, 503 U.S. 115 (1992). To maintain a §1983 claim against a local government, a plaintiff must establish the requisite culpability (a policy, custom, or practice, attributable to municipal policymakers) and the requisite causation (the policy, custom, or practice as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Plaintiff has made no showing of any actionable policy, custom, or practice. Instead, Plaintiff has made conclusory allegations against the City that there exists a policy of impounding vehicles due to the existence of signage on a vehicle, thereby alleging continuous constitutional violations. (Compl., 13:11-15, "Plaintiff is further informed and believes that it is the intent and *policy* of the City of Los Angeles to continue in the future to seize and impound plaintiff's vehicles and similar vehicles owned and used by others, for no reason other than the presence of signage...."). There is no evidence of any policy, custom or practice that the City has a policy of violating the First Amendment in regards to §87.54. Therefore, the City of Los Angeles, as a municipality, cannot be liable under §1983. As a result, the City is entitled to summary judgment on Plaintiff's *Monell* claim.

## V.    CONCLUSION

For all the foregoing reasons, Defendant City of Los Angeles respectfully requests the Court grant the Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment.

20

DATED:  November 7, 2013

MICHAEL N. FEUER, City Attorney
GARY G. GEUSS, Chief Assistant City Attorney
LAURIE RITTENBERG, Assistant City Attorney

By:        /s/ Kimberly A. Erickson
         KIMBERLY A. ERICKSON
Attorneys for Defendant
CITY OF LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT