O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMI AMMARI,<br><br>                Plaintiff,<br>     v.<br>CITY OF LOS ANGELES,<br><br>                Defendant. | Case No. 2:12-cv-04644-ODW(MRWx)<br><br>**ORDER DENYING PLAINTIFF SAMI AMMARI'S MOTION FOR SUMMARY JUDGMENT [26] AND GRANTING DEFENDANT CITY OF LOS ANGELES'S MOTION FOR SUMMARY JUDGMENT [30]** |

## I. INTRODUCTION

Plagued by a surge in mobile billboard advertising and advertising signs affixed to motor vehicles, the California Legislature expressly empowered local authorities to regulate these activities. Defendant City of Los Angeles accepted the state's invitation by enacting Los Angeles Municipal Code section 87.54, the language of which largely echoes the statutory authorization. Section 87.54 prohibits "advertising signs" on motor vehicles unless they are "permanently affixed" in one of the specified manners and do not exceed the overall dimensions of the vehicle.

Plaintiff Sami Ammari brought a facial challenge to the ordinance under various federal and state constitutional provisions, including the First Amendment to the United States Constitution. Ammari and the City filed cross motions for summary judgment.0 Ammari argues that the ordinance is content-based because it differentiates between signs that are for "decoration, identification, or display" and

those that are not. But the City disagrees, contending that the ordinance is a content-neutral, reasonable time, place, and manner speech regulation. Since section 87.54 precludes no specific category of expressive content, the Court finds that the ordinance is content-neutral. And while not an exemplar of regulatory clarity, the Court finds that the City struck a reasonable balance between citizens' well-grounded free-speech interests and the City's demonstrated public-safety concerns. Section 87.54 therefore passes muster under the First Amendment. The Court accordingly **GRANTS** the City's Motion for Summary Judgment and **DENIES** Ammari's Motion.

## II. FACTUAL BACKGROUND[1]

On August 25, 2010, the California Legislature passed Assembly Bill 2756. (Stip. ¶ 1.) The Governor approved the bill, and it became effective on January 1, 2011. (*Id.*) Assembly Bill 2756 authorized local authorities to regulate, among others, "mobile billboard advertising displays."[2] (Stip. Ex. 1.)

In 2011, the Legislature passed Assembly Bill 1298. (Stip. ¶ 5.) AB 1298 added a new subsection (p) to California Vehicle Code section 21100, which empowered local authorities to "regulat[e] advertising on motor vehicles parked or left standing upon a public street." Cal. Veh. Code § 21100(p)(1) (effective January 1, 2012). But the Legislature exempted advertising signs that were "permanently affixed" to a motor vehicle. *Id.* § 21100(p)(2).

On March 7, 2012, the Los Angeles City Council adopted Ordinance No. 182083, which created new Los Angeles Municipal Code section 87.54. (Stip. ¶ 3, Ex. 2.) The City found that the Legislature had given local authorities like the City Council the ability to regulate motor-vehicle advertising signs under the

---

[1] The parties have stipulated to all facts in this case. The resolution of this case is therefore purely a matter of law. (ECF No. 29 ("Stip.").)

[2] This case was consolidated with the related case of *Lone Star Security & Video, Inc. v. City of Los Angeles et al.*, 2:11-cv-02113-ODW(MRWx) (case filed Mar. 11, 2011). *Lone Star* centers around Los Angeles's and other cities' regulation of mobile-billboard advertising. But those regulations are not directly at issue in this case, as this case concerns different ordinances enacted under different legislative authorizations.

amended version of California Vehicle Code section 21100(p)(1).  (*Id.* Ex. 2.)  The City Council also found that the Legislature declared that local authorities' ability to regulate motor-vehicle advertising did not apply to "advertising signs that are painted directly upon or are permanently affixed to the body of, an integral part of, or fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width or height of the vehicle." (*Id.*)  The City Council expressed concern that advertising signs on motor vehicles that are improperly attached, placed over the windows, or exceed the dimensions of the vehicle pose a "safety risk to vehicular traffic and to pedestrians." (*Id.*)

On April 17, 2013, the City Council adopted Ordinance No. 182516, amending section 87.54 to conform to the California Legislature's amendments to Vehicle Code section 21100(p)(2).  (Stip. ¶ 7.)

The current version of section 87.54 reads:

> A motor vehicle may contain advertising signs that are painted directly upon or are permanently affixed to the body of, an integral part of, or fixture of a motor vehicle for permanent decoration, identification, or display and that do not extend beyond the overall length, width, or height of the vehicle.  "Permanently affixed" means any of the following: (a) painted directly on the body of a motor vehicle; (b) applied as a decal on the body of a motor vehicle; (c) placed in a location on the body of a motor vehicle that was specifically designed by a vehicle manufacturer as defined in California Vehicle Code Section 672 and licensed pursuant to California Vehicle Code Section 11701, in compliance with both state and federal law or guidelines, for the express purpose of containing an advertising sign.  A license plate frame installed in compliance with California Vehicle Code Section 5201 may contain an advertisement on that license plate frame and/or a paper advertisement contained within the

/ / /

1 license plate frame if the paper advertisement was issued by a motor
2 vehicle dealer.
3 (Stip. Ex. 4.)

4 Plaintiff Sami Ammari owns several businesses which he advertises via, among
5 others, signs affixed to motor vehicles parked on Los Angeles public streets. On May
6 29, 2012, Ammari filed suit against the City, alleging claims for violation of freedom
7 of speech under the United States and California Constitutions; privileges and
8 immunities under both Constitutions; and substantive due process. (ECF No. 1.)
9 Ammari only seeks a facial challenge to section 87.54's validity. (Stip. ¶ 9.)

10 On November 7, 2013, Ammari and the City both filed cross-motions for
11 summary judgment. (ECF Nos. 26, 30.) Each party timely opposed the other's
12 Motion. (ECF Nos. 35, 37.) After reviewing the parties' briefs, the Court noted that
13 section 87.54's explicit text appeared to reach all land in Los Angeles, public or
14 private, as well as parked and moving vehicles—notwithstanding the parties'
15 arguments that assumed a more limited scope to the section. The Court therefore
16 ordered the parties to submit supplemental briefs on these issues in advance of the
17 summary-judgment hearing. (ECF No. 42.) On December 16, 2013, the parties filed
18 their supplemental briefs. (ECF Nos. 43, 44.)

19 On December 17, 2013, the Court held a hearing on the Motions and took the
20 matters under submission. Those Motions are now before the Court for decision.

### III. LEGAL STANDARD

22 Summary judgment should be granted if there are no genuine issues of material
23 fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.
24 P. 56(c). The moving party bears the initial burden of establishing the absence of a
25 genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
26 Once the moving party has met its burden, the nonmoving party must go beyond the
27 pleadings and identify specific facts through admissible evidence that show a genuine
28 issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in

affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

Ammari argues that section 87.54 violates several federal and state constitutional provisions, including the First Amendment. He asserts that the ordinance is content-based and therefore subject to strict scrutiny. But the City disagrees, contending that the section 87.54 is a content-neutral, reasonable time, place, and manner regulation. The Court considers each argument in turn.

**A. First Amendment**

*1. Overbreadth and suppression doctrines*

Ammari contends that section 87.54 is facially invalid under both the First Amendment's substantial-overbreadth and suppression doctrines.

The government bears the burden of demonstrating the constitutionality of its speech restrictions. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). A typical facial challenge to a law's validity requires "that no set of circumstances exists under which [the law] would be valid," or that the law "lacks any 'plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010); *see also Washington v. Glucksburg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring

in judgment); *United States v. Salerno*, 481 U.S. 739, 745 (1987). But a law may also be facially invalid as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Stevens*, 550 U.S. at 473; *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944–45 (9th Cir. 2011) (en banc).

For the substantial-overbreadth doctrine to apply, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984). It is not enough for a plaintiff to just perceive of "some impermissible applications." *Id.* at 800.

The related suppression doctrine applies when a regulation forecloses "an entire medium of expression," as there is a danger that the statute may suppress too much speech. *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994). As the Ninth Circuit has noted, "In essence, the suppression doctrine is an overbreadth doctrine that prevents highly restrictive yet content-neutral limitations on speech from foreclosing or nearly foreclosing an entire medium of expression[.]" *Maldonado v. Morales*, 556 F.3d 1037, 1046 (9th Cir. 2009).

Ammari argues that section 87.54 is substantially overbroad because it applies to the entire City of Los Angeles—an area encompassing 470 square miles and approximately 650 miles of streets. He contends that the ordinance is similar to the blanket prohibition of an entire medium of expression invalidated in *City of Ladue*, and the ordinance provides no alternatives unlike the regulation at issue in *Maldonado*.

But the City disagrees, asserting that section 87.54 does not ban all signs, or even nearly all signs—only those signs that are not "permanently affixed" to a motor vehicle and that extend beyond the vehicle's overall dimensions.

As the United States Supreme Court noted, the first step in determining whether these doctrines apply is to construe the ordinance. *United States v. Williams*, 553 U.S.

285, 293 (2008). The City did not specifically define "advertising signs," only what it means for a sign to be "permanently affixed" to a motor vehicle. In its mandate affirming this Court's denial of a preliminary injunction in *Lone Star*, the Ninth Circuit held that "a display of any message" falls within the definition of "advertising" in Los Angeles Municipal Code section 87.53. *Lone Star Sec. & Video, Inc. v. City of L.A.*, 520 F. App'x 505, 506 (9th Cir. 2013). Given that the City Council adopted section 87.54 to coincide with similar concerns as those addressed in section 87.53, there is no principled reason why the definition of "advertising" would be any different in this case. *See also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 494 (1981) (plurality opinion) (noting the definition of "advertising display sign" adopted by the California Supreme Court of "any sign that 'directs attention to a product, service or activity, event, person, institution or business'"); *Showing Animals Respect & Kindness v. City of W. Hollywood*, 166 Cal. App. 4th 815, 819–20 (Ct. App. 2008) ("The term 'advertise' is not limited to calling the public's attention to a product or a business.").

Defining "advertising" that broadly certainly does encompass a great deal of speech as Ammari contends. But the City correctly points out that the ordinance does not prohibit all advertising signs on motor vehicles. A vehicle may contain an advertising sign so long as it is "permanently affixed," as that term is defined, and does not extend beyond the length, width, or height of the vehicle. Advertisers like Ammari can thus fall outside section 87.54's scope by permanently affixing their signs to their motor vehicles in compliance with the ordinance's terms.

While both parties refer to section 87.54 as applying only to parked vehicles on public lands, the current text of the regulation makes no mention of a motor vehicle being parked or to public land. Only the ordinance's title includes those terms, and it is well-settled that a title "cannot limit the plain meaning of the text." *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (internal quotation marks omitted). The

/ / /

Court therefore requested that the parties submit supplemental briefing on the issue of the ordinance's scope vis-à-vis parked vehicles and public lands.

The City persuasively argues that the Court should use the incorporation-by-reference doctrine to construe section 87.54 to apply only to vehicles parked or left standing on public land. Under the statutory-construction rules, a statute may refer to another statute and thereby incorporate the second statute's language as if it were set forth in the first. 2B Sutherland Statutory Construction § 51:7 (7th ed.); *United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir. 1998) ("Generally, a statute is not unconstitutionally vague merely because it incorporates other provisions by reference; a reasonable person of ordinary intelligence would consult the incorporated provisions.").

Section 87.54 provides that a "motor vehicle in violation of this Section may be impounded pursuant to California Vehicle Code Section 22651(w), Subsections (1) and (2)." Vehicle Code section 22651(w) states that a peace officer or other qualified individual may remove a vehicle within the city's territorial limits when the "vehicle is parked or left standing in violation of a local ordinance or resolution adopted pursuant to subdivision (p) of Section 21100." Cal. Veh. Code § 22651(w)(1). Section 22651(w)(1) therefore incorporates another statute by reference—section 21100(p). That section authorizes local authorities to "adopt rules and regulations by ordinance or resolution regarding . . . [r]egulating advertising signs on motor vehicles *parked or left standing upon a public street*." *Id.* § 21100(p)(1) (emphasis added). By incorporating these Vehicle Code provisions, the City has limited section 87.54's scope to only vehicles parked or left standing on public land in Los Angeles.

At the summary-judgment hearing, Ammari's counsel argued that section 87.54 operates as a "blanket ban" on advertising signs. But section 87.54 does not completely prohibit all advertising signs—only those not permanently affixed to a vehicle. The ordinance is therefore much more similar to the ordinance at issue in *Maldonado*. In that case, the plaintiff challenged California's Outdoor Advertising

1 Act, which barred property owners from using billboards along a landscaped freeway
2 to advertise offsite businesses. 556 F.3d at 1041. The Ninth Circuit rejected a
3 suppression argument, noting that advertisers were free to post any noncommercial
4 message or post onsite advertising. *Id.* at 1046. Since section 87.54 allows
5 advertisers like Ammari to still utilize advertising displays if they comply with the
6 ordinance's provisions, the Court finds that neither the overbreadth nor suppression
7 doctrines apply to invalidate the regulation.

       2.    *Content-neutrality*

9       Ammari next argues that section 87.54 is a content-based regulation and
10 therefore should be subject to strict scrutiny under the First Amendment. *See R.A.V.*
11 *v. City of St. Paul, Minn.*, 505 U.S. 377, 403 (1992 ) (noting that under strict scrutiny,
12 the government must demonstrate that the regulation is necessary to achieve a
13 compelling government interest).

14       The United States Supreme Court has held that the principal inquiry in
15 determining content-neutrality is "whether the government has adopted a regulation of
16 speech because of disagreement with the message it conveys." *Ward v. Rock Against*
17 *Racism*, 491 U.S. 781, 791 (1989). Regulations that "distinguish favored speech from
18 disfavored speech on the basis of the ideas or views expressed are content based. By
19 contrast, laws that confer benefits or impose burdens on speech without reference to
20 the ideas or views expressed are in most instances content neutral." *Turner Broad.*
21 *Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994) (citations omitted); *see also Hill v.*
22 *Colorado*, 530 U.S. 703, 720 (2000) (holding that regulations are content-neutral if
23 they are justified without reference to the content of regulated speech).

24       Ammari contends that section 87.54 is content-based because it distinguishes
25 between "advertising signs" and all other signs, i.e., those that do not advertise.
26 Within the subset of advertising, Ammari also argues that the ordinance differentiates
27 between those advertising signs that are permanently affixed and those that are not.
28 Citing to the Ninth Circuit's opinion in *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136

1 (9th Cir. 1998), Ammari asserts that section 87.54 is content-based because an officer
2 enforcing the regulation would have to look at the sign in question to determine
3 whether it is for "decoration, identification, or display," which would be examining
4 the sign's content.

5 But the City touts the ordinance's content-neutrality, arguing that that section
6 87.54 does not "distinguish favored speech from disfavored speech on the basis of the
7 ideas or views expressed." (Mot. 6 (quoting *Lone Star Sec. and Video, Inc. v. City of
8 L.A.*, 520 F. App'x 505, 506 (9th Cir. 2013)).) The City points out that the ordinance
9 only regulates how advertising signs are attached to a motor vehicle or the manner in
10 which signs' contents are displayed—not the signs' contents or the views expressed
11 on them. According to the City, section 87.54 does not single out any particular
12 message for regulation but rather prohibits all non-permanently affixed signs.

13 Though Ammari contends that the Ninth Circuit's decision in *S.O.C., Inc. v.
14 County of Clark* compels the Court to find that the Los Angeles ordinance is content-
15 based, *S.O.C.* is distinguishable. In that case, Clark County, Nevada, had adopted an
16 ordinance which prohibited "off-premises canvassing" that "propose one or more
17 commercial transactions." 152 F.3d 1136, 1140, 1145. The Ninth Circuit held that
18 the ordinance was content-based because "an officer who seeks to enforce the Clark
19 County Ordinance would need to examine the contents of the handbill to determine
20 whether its distribution was prohibited." *Id.* at 1145.

21 But here, the term "advertising sign" contains no limitation or other content-
22 specific reference, such as "propos[ing] one or more commercial transactions" like in
23 *S.O.C.* As discussed above, "advertising" refers to announcing or making public
24 anything—not just commercial transactions. A person expressing support for a sports
25 team, political candidate, or music group via a sign affixed to her motor vehicle would
26 be "advertising" under the broad definition of that term. Section 87.54 distinguishes
27 no type of content that is either favored or disfavored.
28 / / /

The ordinance does differentiate between the manners in which a person attaches signs to her vehicle. The City permits advertising signs if they are "permanently affixed" via one of the prescribed methods and do not extend beyond the overall length, width, or height of the vehicle. An officer enforcing the regulation need not read the sign to know whether a person complied with section 87.54's commands; indeed, a wordless, white sign protruding from a vehicle could violate the ordinance.

To demonstrate that section 87.54 is content-based, Ammari's counsel suggested an example at the hearing of a UPS truck he had observed. He stated that the truck featured various types of signs, including the name of the company, UPS's phone number and web address, and that the vehicle has low emissions. He argued that the web address and low-emissions signs may not be permissible under the ordinance, because he did not believe they fit under any category of decoration, identification, or display.

But as the Court discussed at the hearing, there is no conceivable sign that would not be considered "decoration, identification, or display." While the definitions of "decoration" and "identification" may be more circumscribed in common ken, to "display" means "to put or spread before the view." Merriam-Webster's Collegiate Dictionary 334 (10th ed. 1993). Whether a person employs a sign advertising their own business, someone else's business, their political ideology, religious affiliation, or that they were "just married," all of those signs either decorate or identify the motor vehicle or simply spread their message to the general public.

Further, the Supreme Court has articulated the difference between a speech regulation simply referring to the content regulated—which is content-neutral—and a regulation distinguishing favored from disfavored speech—which is content-based. As the Court stated, "We have never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct." *Hill*, 530 U.S. at 721. The fact that a police or

parking officer would have to determine whether a sign—regardless of the message—was permanently affixed to a vehicle does not compel a finding that section 87.54 is content-based.

The Court therefore finds that section 87.54 is content-neutral and not subject to strict scrutiny.

### 3. *Time, place, and manner regulation*

Time, place, and manner speech regulations are subject to less-exacting scrutiny, and the standard of review depends on the type of forum at issue. *See Ward*, 491 U.S. at 798–99. Neither party disputes that section 87.54 regulates speech in a public forum, i.e., the City's public streets. Public streets are "the archetype of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988); *Comite de Jornaleros*, 657 F.3d at 945.

Time, place, and manner regulations in public fora such as section 87.54 are reasonable if they "(1) are content-neutral; (2) are narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels of communication." *S.O.C., Inc.*, 152 F.3d at 1145; *Comite de Jornaleros*, 657 F.3d at 945.

#### i. *Substantial governmental interests*

Ammari appropriately concedes that the City's interests in traffic safety and aesthetics constitute substantial government interests under the time, place, and manner rubric. Case law has repeatedly confirmed that these goals are indeed "substantial." *Metromedia*, 453 U.S. at 507–08 (plurality opinion); *Taxpayers for Vincent*, 466 U.S. at 807 (reaffirming this holding from *Metromedia*); *One World One Family Now v. City & Cnty. of Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996). The Court finds no reason to conclude that the City's interests in traffic safety and aesthetics are not substantial governmental interests.

/ / /

/ / /

      *ii.   Narrow tailoring*

The crux of the parties' time, place, and manner arguments focuses on whether the ordinance is narrowly tailored to serve the City's demonstrated substantial governmental interests. To be narrowly tailored, a regulation must not be "substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800. The regulation will be valid if the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799. And a regulation is valid even if a court concludes that the government could have achieved its interests via some less-speech-restrictive alternative. *Id.* at 800.

A time, place, and manner regulation must also leave open ample alternative channels of communication. *S.O.C., Inc.*, 152 F.3d at 1145. The First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). But alternatives are not adequate if they do not allow the speaker to reach her intended audience, the location is part of the expressive message, or there are no opportunities for spontaneity. *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009).

Ammari contends that section 87.54 is not narrowly tailored, because the ordinance distinguishes between advertising signs for "decoration, identification, or display" and others that are not for those purposes without any rational basis for doing so. Ammari also argues that the section differentiates between parked and moving vehicles without any principled justification for why parked vehicles pose a greater danger than moving ones. Additionally, he points out that there are other methods of permanently affixing a sign to a vehicle that are equally as safe, such as using suction cups for pizza-delivery signs. And there other objects attached to motor vehicles in a non-permanent fashion that are equally or more dangerous than advertising signs, but section 87.54 does not purport to reach those dangers. Lastly, Ammari enumerates a

/ / /

laundry lists of signs which the ordinance purportedly bans to demonstrate the section's breadth.

The City views section 87.54 as narrowly tailored, pointing out that Ammari and others can escape the ordinance's regulatory grasp by simply attaching their advertising signs via one of the prescribed permanent-affixing methods. The City argues that the ordinance only prohibits a particular manner of fastening signs—not all conceivable methods. And on a macroscopic level, the City also reminds Ammari that advertisers are still free to advertise on bus shelters, stationary billboards, and signs on buses, taxis, and trucks.

The ordinance is quite broad. But the ordinance's breadth is consistent with the City's substantial governmental interests in traffic safety and aesthetics. The City argues that a non-permanently-affixed sign can become unfastened from a vehicle—moving or otherwise—and injure a passerby or another motorist. It therefore only makes sense for the City to reach all advertising signs, as all such signs pose the danger the City wishes to guard against. If the City were not able to regulate all advertising signs, the City would not be able to achieve its safety goal as effectively.

There is little doubt that the true evil the City sought to regulate is advertising signs—whatever their message. But the City struck a balance between advertisers' strong free-speech rights and eliminating all visual clutter. Section 87.54 allows any advertising sign so long as the sign is permanently-affixed and does not extend beyond the overall dimensions of the vehicle. If one were to remove either of these requirements, the ordinance would no longer protect other Los Angeles citizens against signs that could suddenly become unfastened.

At the summary-judgment hearing, Ammari's counsel urged that the ordinance was both overinclusive and underinclusive, as the City's definition of "permanently affixed" does not encompass all the methods by which one could safely affix a sign to a vehicle. But while perhaps one could conceive of some other methods of safely permanently affixing signs as Ammari argues, the First Amendment does not require

the City to choose the "least restrictive or least intrusive means" of achieving its goals. *Ward*, 491 U.S. at 799.

Several considerations further compel the Court to conclude that section 87.54 is narrowly tailored and leaves open ample alternative channels of communication. First, as construed above, the ordinance only applies to vehicles parked or left standing on Los Angeles public streets. While Ammari's counsel expressed concern over the ordinance's geographic scope, it would make little sense for the City to regulate anything less than the entire city. A sign poorly affixed to a vehicle would injure someone just as badly in Koreatown as it would in Westwood.

Second, anyone can place an advertising sign on a motor vehicle in Los Angeles—they just have to permanently affix the sign in one of the enumerated methods and ensure the sign does not exceed the overall length, width, and height of the vehicle. The City has foreclosed no category of expression. Finally, citizens can still advertise on buses, taxis, and other mass-transit vehicles so long as those signs are "placed in a location on the body of a motor vehicle that was specially designed by a vehicle manufacturer" for that purpose. (Stip. Ex. 4.)

The Court consequently finds that section 87.54 is a reasonable time, place, and manner regulation—and therefore a constitutional speech regulation under the First Amendment.

**B.    California Constitution article I, § 2(a)**

Ammari also alleges that section 87.54 is facially invalid under the California Constitution's free-speech provision, or article I, section 2(a)—though he does not argue this point in his Motion. Since California courts "employ the same time, place and manner test as the federal courts" in analyzing California's free-speech clause, *Prigmore v. City of Redding*, 211 Cal. App. 4th 1322, 1336 (Ct. App. 2012), the Court's First Amendment findings above apply equally to Ammari's article I, section 2(a) claim.

C. **Substantive due process**

Ammari further contends that section 87.54 violates the federal and state Constitutions' substantive due-process provisions.

*1. Fourteenth Amendment*

The City argues that substantive due process does not apply in this case, because the specific First Amendment rubric supplants the broader, more nebulous due-process protection under the *Graham* rule. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that the Fourth Amendment's "explicit textual source of constitutional protection" applied instead of "the more generalized notion of 'substantive due process'").

The City is correct that the First Amendment analysis applies in this case in lieu of substantive due process. *See Corales v. Bennett*, 567 F.3d 554, 569 n.11 (9th Cir. 2009) (noting that denial of the plaintiffs' First Amendment claims foreclosed consideration of their substantive due-process claim); *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) ("In this case, because the First Amendment explicitly covers [plaintiff's] claim, the First Amendment, not the Fourteenth Amendment's guarantee of substantive due process, should guide the analysis of the [plaintiff's] claim[s]." (internal quotation marks omitted)).

*2. California Constitution*

California Constitution article I, section 7(a) provides that a "person may not be deprived of life, liberty, or property without due process of law." To survive scrutiny under this clause, a law need only be reasonably related to a proper legislative goal. *Coshow v. City of Escondido*, 132 Cal. App. 4th 687, 711 (Ct. App. 2005). Since the First Amendment's time, place, and manner rubric employs a more heightened standard, section 87.54 necessarily passes muster under article I, section 7(a).

D. **Fourteenth Amendment Privileges or Immunities Clause**

In his Complaint, Ammari alleges "Los Angeles Municipal Code §87.54 [*sic*], on its face and as applied, violates plaintiff's privileges or immunities of citizenship

under the First and Fourteenth Amendments to the United states Constitution and 42 U.S.C. §1983 [*sic*]." (Compl. ¶ 21.) In the *Slaughter-House Cases*, 83 U.S. 36 (1872), the United States Supreme Court held that the Fourteenth Amendment Privileges or Immunities Clause was not "intended as a protection to the citizen of a State against the legislative power of his own State." *Id.* at 74. Rather, the Clause only protects the "privileges and immunities of the citizen of the United States"— though the Supreme Court has never fully expounded those rights. *Id.* at 75–76; *see also Saenz v. Roe*, 526 U.S. 489, 522 (1999) (Thomas, J., dissenting). Ammari has not even attempted to argue how the City has deprived him of privileges or immunities of national citizenship.

### E. California Constitution Privileges and Immunities Clause

The California Constitution's Privileges and Immunities Clause provides that a "citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens." Cal. Const., art. I., § 7(b). This Clause only prohibits classifications that are "unreasonable or arbitrary." *Durham v. City of L.A.*, 91 Cal. App. 3d 567, 574 (Ct. App. 1979).

Ammari also does not argue how the City has deprived him of privileges and immunities of California citizenship under the section 7(b). He has not demonstrated how the City has made any classifications or how those classifications are unreasonable or arbitrary.

### F. Money-damages limitations

The City correctly argues that California Constitution article I, sections 2(a) and 7(a) do not provide a private right to damages. *Degrassi v. Cook*, 29 Cal. 4th 333, 342 (2002); *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 321 (2002). But since Ammari has not established any viable claims, he could not obtain damages from the City in any event.

/ / /

/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant City of Los Angeles's Motion for Summary Judgment (ECF No. 30) and **DENIES** Plaintiff Sami Ammari's Motion for Summary Judgment (ECF No. 26). A judgment will issue.

**IT IS SO ORDERED.**

December 20, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**